ROBINSON'S Exr's. vs. ROBARDS.

15　459
99　598
15　459
51a　436
15　459
61a　566
15　459
68a　56

1. The first and fourth sections of the act concerning fraudulent conveyances, must be construed like any other statute declaring a transaction void. When the acts appear, which the law declares shall make a conveyance void, it is the duty of the court to declare the enactment of the law to the jury.

2. If a conveyance, on the face of it, appears to be for the use of the person making it, as a matter of law, the court will declare it void against creditors, just as it would declare a bond conditioned to murder a man, or do any other unlawful act.

3. When it appears that there is a conveyance of chattels or slaves, for a consideration not deemed valuable in law, and possession does not really and bona fide accompany such conveyance, and it is not properly recorded, it is the duty of the court to declare to the jury that such conveyance is void against creditors and purchasers.

4. In all cases of conveyances affecting creditors and purchasers, the inadequacy of price is a circumstance of great weight against their validity.

ERROR to Boone Circuit Court.

GORDON, for plaintiffs in error.

1. In order to constitute the conveyance of the horses, hogs, sheep, farming utensils and other personal property, by William Robards to his son John Robards, a valid and legal one, so far as the creditors of William Robards are concerned, the possession of said property must have been delivered to and continued with him after the purchase of the same. 10th section, act concerning fraudulent conveyances.

2. The conveyance of his personal property, horses, hogs, cattle, sheep, farming utensils, &c., by William Robards to his son John Robards, in consideration that he would support him and his family, is fraudulent and void as against bona fide creditors existing at the time of such conveyance. Cary vs. Parker, 9 Gowen R. 73; Chief Justice Bronson's opinion in case of Van Wick vs. Seward, 18th Wend. 375; Halbert and others vs. Grant, 4 Monroe, 581; 10th B. Monroe R. 81-7; Page's Chancery Rept's, 569; 9 Ben. Monroe's R. 511; 5 Cow. R. 547; 3 Marshall's Rep. 247; 15 Vermont R. 252.

3. The conveyance by William Robards to his son John Robards of his personal property, horses, hogs, sheep, cattle, farming utensils, embracing most, if not all, of the property owned by him, for and in consideration that John would support him and his family, is a conveyance of goods and chattels, in trust, to his own use, within the meaning of the statute, and there-

fore fraudulent and void as against creditors existing at the time of such conveyance. Rev. Code, act concerning fraudulent conveyances, approved March 4th, 1845, section 1.

4. The gift of the slave Nathan by William Robards to his son John Robards, the possession remaining with William Robards, and there having been executed no deed of gift or bill of sale, such gift is presumed to be fraudulent against the complainants, who were at the time creditors of the said William Robards. Jackson vs. Seward, 5th Cow. 67; 3 J. C. Repts. 481.

5. The conveyance of Martin and Sharper, by William Robards to John Robards, at a time when William Robards was largely in debt, and about the time of the rendition of the judgment against him for a large amount in favor of the said complainants, with a knowledge of such indebtedness and of the rendition of such judgment on the part of John Robards, are circumstances from which the jury might have inferred fraud in the transaction. Van Wick vs. Seward and others, 18 Wend. 375; Chief Justice Johnson's opinions in P. B. Pope vs. Thos. Anderson et al.; 1 Smede's and Marshall's Chy. Repts. 135.

6. The gift of the slave Nathan by William Robards to his son John Robards, was fraudulent and void as to the prior creditors of said William Robards. Trimble vs. Ratcliff, 9 B. Monroe, 511, 514, 1 Hatsted's R. 450.

7. The court erred in permitting the defendants to prove the value of William Robards' land in March, 1849: *first*, because the evidence given was not competent to rebut the proof given by the complainants to establish fraud in the several pretended transfers by William Robards to his son John Robards, in the years 1841, 1847, 1848: *second*, because the same was irrelevant and calculated to mislead the jury.

8. The court erred in permitting the defendants to prove what Walter Robinson, one of the complainants, said in relation to purchasing the lands and the manner of selling the same, for the reason that the evidence was irrelevant and calculated to mislead the jury.

### HAYDEN, for defendant in error.

1. The defendant, William Robards, at the time of transferring the farming utensils and other property mentioned under that contract, had a right so to do, for the consideration upon which, he made the same to John M. Robards, as also to sell the slaves, Sharper and Martin, to the said John at the time this sale was made, notwithstanding the existence of the debt due the plaintiffs. The contract was for a valuable consideration, and passed the title to the property prior to the existence of any lien thereon in favor of the complainants, and there is no evidence in the cause conducing to show that the conveyance was not bona fide, at least none to countervail the defendant's answer, which is well fortified by the proofs in the cause. 5th B. Monroe Rep. 308; 5 J. J. Marshall, 554.

2. The said William Robards had a right to give the slave, Nathan, in the year 1841, to the said John Robards, and there is nothing in the record having the slightest tendency to show that the gift was made to defraud, or to injure the prior or subsequent creditors of the said William Robards, but on the contrary the evidence is very satisfactory that it was a bona fide transaction, and made at a time when the said William Robards was the owner of a large estate, and but little in debt compared with the amount of his estate, and the slave given was of little value. Story's Equity, secs. 353, 354, 355, 358, &c.; 11 Mo. Rep. 402, Lane vs. Kingsberry.

3. The instructions which the court refused to give to the jury, at the instance of the complainants, ought not to have been given by the court, because not warranted nor sanctioned by law, had there been some evidence, as supposed by plaintiff's counsel; and because the court gave to the jury all the law of the case.

4. The complainants have no right to complain in this court of the finding and the decree of the circuit court, because they wholly failed to do so in their motion in that court for a rehearing of the cause.

5. Even though this court may be disposed to revise the finding and decree of the circuit court, notwithstanding a failure on the part of the complainants to complain of it in their motion for a new trial, yet this court will not reverse the decree. If from the evidence in the cause it is manifest that the decree is for the right party, notwithstanding this court may not be satisfied with the law prescriptions ministered by that court to its auxiliary, the jury, for their guide in deciding upon the facts of the case, to inform the conscience of the chancellor, and not for the purpose of determining conclusively and independently of the court the question as to the facts. 7 John's Cases, 500, 506, 507; 6 John's Chy. 255, 256; 2 Ves. Junior, 528-9, 2 Ves. 256; 1 Bro. P. C. 58.

SCOTT, J., delivered the opinion of the court.

This was a bill in chancery, filed by the complainants against the defendants, charging substantially, that Wm. Robards, one of the defendants, in December, 1847, was indebted to the complainants in a large sum of money, for which, afterwards, on the 25th August, 1848, a judgment for the sum of $4493 was rendered, on which a special fi. fa. was issued, directing the sale of the lands in the execution mentioned, and if the said lands should be insufficient to satisfy the said execution, then of the remaining lands and tenements, goods and chattels, belonging to the said Robards to satisfy the same : that in March, 1849, the sum of $1289 65 was made on said execution: that at the time of the rendition of the said judgment, the said W. Robards was largely indebted, and fraudulently conveyed to his two sons, Wm. A. Robards and Jno. M. Robards, and other persons, all his slaves, ten or twelve in number, and all his other personal property, consisting of horses, cattle, hogs, farming utensils, &c. : that the said Wm. Robards, at the time of the rendition of the said judgment, fraudulently and without consideration, conveyed to Jno. M. Robards, three slaves, Sharper, Martin and Nathan, together with a large amount of other personal property, consisting of horses, cattle and other stock, household and kitchen furniture, farming utensils, &c. : that the said conveyance was made to the said John Robards at a time when he was fully aware of his father's indebtedness; was without consideration, and made with intent to defraud the complainants.

The answer of Jno. M. Robards, one of the defendants, admits the indebtedness of W. Robards to the complainants, for land sold and the judgment, execution and sale of said land for the payment of the purchase money as stated in the bill : that he left Boone county in June, 1846, and was absent twelve months, and never understood how matters were between his father and the complainants : that in the fall of 1847, his father being in bad health and unable to carry on any business,

agreed to give him what stock and farming utensils then were upon the farm, in consideration that he would support the said Robards, his father, and his wife : that he accepted the agreement and took the property accordingly, together with the use of the slaves and farm : that there was but a small stock and few farming utensils : that in 1841, his father gave him a small negro boy, named Nathan, having previously given to each of his other children one or more slaves : that ever since the gift of said slave, he has had possession of him and exerted control over him : that in September, 1848, he purchased of his father two slaves, Sharpe and Martin, for the sum of $650, which was paid down : that he purchased the said slaves fairly, although he knew at the time of the judgment of the complainants against his father, but he believed the land would be amply sufficient to satisfy it.

The answer of Wm. Robards admitted his indebtedness to the complainants, and the judgment, execution and sale of his land to pay the debt : that he believed the land amply sufficient to pay the debt due the complainants, as they had taken it as a security for a much larger sum which had been reduced by payments : that one of the complainants used means to prevent a fair sale of the land, and they conspired to cause a sacrifice of it : that at the time of the rendition of the payment, he owned ten slaves, not valuable, being mostly children, and a few ordinary articles of household furniture : that in the fall of the year 1847, in consequence of ill health, he gave all his stock and farming utensils to his son John, in consideration he would take charge of the farm, and support him and his family. The stock thus conveyed was inconsiderable. His son accepted the conveyance, and supported him and his family until the spring of 1849. That in consequence of his inability to establish payments, made by him to the complainants, their recovery at law was twice as large as it should have been : that in the year 1841, he gave a slave to each of his sons; that the slave given to his son John was named Nathan, and that he has never had any control over or claim to him since that time : that he was not then embarrassed nor ever expected to be : that on or about the 5th September, 1848, he executed to Wm. A. Robards a bill of sale for eight slaves, a man and his wife and six of their children, and also a bill of sale to his son John for a boy Martin and a man Sharper : that he was indebted to his son William in the sum of $600, which he was unable to pay without a sale of a portion of his slaves, and being unwilling to separate a family, he induced his son William to take it and pay him the balance in money : that William took the slaves on condition that he would take in part payment a bond on H. C. Myers for $400 : that the man slave he sold to

his son John was of little value, being badly ruptured : that all of the slaves were of but little value for present use, and at the time of sale he was firmly persuaded that the land would pay the complainants' debt : that the sale of his slaves was induced by his old age and their expensiveness to him, and with no intent to hinder, delay or defraud his creditors : that with the proceeds of the sale of the said slaves, he has paid all his other debts : that William paid fourteen hundred dollars for the slaves purchased, which was their fair value ; that the sale to John was bona fide, and he actually received the purchase money. He alleges that he had a claim against the estate of the complainants' testator, growing out of a misrepresentation or breach of warranty on the sale of the land : that he owns land in Kentucky and is not insolvent.

Replications were filed to these answers, and three issues involving the validity of the three several transactions between Wm. & John Robards, were directed by the court to be made.

First. As to the gift of the child Nathan.

Second. As to the conveyance of the stock, &c.

Third. As to the sale of the slaves Martin and Sharper.

Evidence was given on both sides in favor of their respective views of the subject, and on the trial the court gave the following instructions to the jury at the instance of the complainants.

"If the jury believe from the evidence that the several conveyances of the slaves and other personal property, mentioned in the evidence, from William Robards, the father, to John Robards, his son, were concocted or contrived between them for the purpose of hindering, delaying or defrauding the plaintiffs in the collection of their debts on Wm. Robards, then the verdict of the jury should be for the plaintiffs."

"That plaintiffs, in this case, are not bound to make positive proof of fraud, but the jury may take into consideration all the facts and circumstances in order to find their verdict."

"That in order to constitute the gift of the slave Nathan, by William Robards to John Robards, valid, the jury must be satisfied, from the evidence, that the possession of said slave was delivered to the said John Robards at the time of the gift, or that said gift was evidenced by deed in writing and acknowledged or proved and recorded within six months after the date of said deed."

Although fraud is not to be presumed, yet it may be proved from circumstances; and in determining that question, the jury may take into consideration all the facts and circumstances detailed in evidence."

"If the jury find from the evidence that the several conveyances of the slaves and other personal property spoken of in evidence, from

William Robards to John Robards were contrived between them with intent to hinder, delay or defraud the creditors of the said William Robards, then the jury should find for the plaintiffs, nothwithstanding the said John Robards may have paid the full value of the property purchased."

"That although a debtor has a right, in the payment of his debts, to prefer one creditor to another, that preference must be an honest one, and if the jury find from the evidence, that at the time of such transfer of any of the property, plaintiffs were the creditors of William Robards and that such transfer was made with intent on the part of Wm. Robards to hinder, delay, or defraud the plaintiffs in the collection of their debt, and that John participated in said fraud, then the jury ought to find for plaintiffs as to such transfer, although they may believe from the evidence that John paid the full value for the property thus transferred."

And refused the following instructions asked by the complainants:

"That if the conveyance of the horses, cattle, hogs, sheep, household and kitchen furniture and farming utensils, and other property made by William Robards to John Robards, his son, was not accompanied by an immediate delivery of the possession of said property, and followed by an actual and continued change of possession, then the said conveyance is presumed to be fraudulent as against the plaintiffs, provided the jury shall find that the plaintiffs were creditors at the time, of the said Williams Robards."

"If the jury believe from the evidence, that William Robards, the father, conveyed all his personal property, consisting of horses, cattle, hogs, sheep, household and kitchen furniture, farming untensils and other articles to his son John Robards, in consideration that the said John was to support him and his family, and that at the time of making said conveyance, the plaintiffs were creditors of the said Wm. Robards, the said conveyance is fraudulent, and as to that issue the jury ought to find for the plaintiffs."

"If the jury find from the evidence, that William Robards, the father, conveyed all his personal property, except his slaves, to his son John, for and in consideration that his said son John agreed to support him and his family, and that at the time of such conveyance the plaintiffs were creditors of the said William, then said conveyance is a conveyance of goods and chattels in trust to the use of the said William Robards within the meaning of the statute of this State and fraudulent as against the plaintiffs."

"If the jury believe from the evidence that at the time Wm. Robards

gave the slave Nathan to John Robards, he, William was largely indebted to plaintiffs or their intestate, and that said Nathan remained in the possession of said William Robards, that then such gift is presumed to be fraudulent as against these plaintiffs."

"If the jury believe from the evidence, that the pretended convey-veyance of Sharper and Martin, from William Robards to John Robards, was made at a time when William Robards was largely in debt, and about the time a judgment was rendered against him of which John had knowledge, and that John Robards, was his son, and at the time residing with him, and that no other personal property was retained by William Robards; these are circumstances from which the jury may infer the existence of fraud in the transaction."

And gave the following instructions asked by the defendant:

"That although the jury may find from the evidence that William Robards was indebted at the time he gave the slave Nathan to his son John, yet the mere fact of such indebtment, does not of itself constitute or make the gift fraudulent and void; but the question whether the same be fraudulent or not is to be ascertained, not from the mere fact of the indebtment at the time of the gift, but from all the circumstances of the case."

"That if the jury find from the evidence, that William Robards, in the fall of 1847, transferred to his son John the horses and cattle, farming untensils and other property of which he was possessed, with the use of the farm, for a valuable consideration as testified to by the witness, William A. Robards, and that the transfer of the property so made was *bona fide*, and not made with an intent to delay, hinder, defraud or prevent the creditors of the said William Robards from the collection of their lawful debts or demands, that then the jury ought to find the second issue for the defendant."

"To constitute the consideration for the property, &c., mentioned above in the last instruction, a valuable consideration, it is not necessary that the same should have been equal in value to the amount of the property, &c., transferred, &c., by the said William to the said John, nor is it necessary that the same should have been paid or rendered by the said John to the said William in money, but it is only necessary that the jury should be satisfied from the evidence that the same was paid or rendered in other valuable things, or in the services of him, the said John, at the request of the said William."

"That if the jury find from the evidence that the said slaves, Sharper and Martin, were sold by the said William Robards to the said John Robards for the sum of six hundred and fifty dollars, and that the same

was made *bona fide*, and not with an intention on the part of the said William Robards to delay, hinder or defraud the creditors of the said William Robards in the collection of their lawful debts or demands against him, then the jury ought to find the third issue for the defendant."

"That even though the jury may find that the said William Robards made the sale of slaves, Sharper and Martin, to the said John Robards with an intent to defraud, delay or hinder the creditors of the said William Robards from the collection of their lawful demands against him, yet the jury are bound to find their verdict for him, the said John, upon said issue, if they find from the evidence that he purchased and paid the price of $650 for those negroes bona fide, without notice or knowledge of the said unlawful intent of him, the said William.

" That fraud is not to be presumed, but the law requires the party who alleges or charges another with it to prove the same to the satisfaction of the jury.

"That notwithstanding the plaintiffs had recovered the judgment of the Boone circuit court for their debt, &c., against the said William Robards, as shown by the record thereof, as read in evidence by the plaintiffs, yet the said William Robards had a legal right to sell his slaves, Sharper and Martin, to obtain means to pay the claims of other creditors against him.

"That it does not devolve upon the defendant in this case to prove to the jury that the transfer of the household goods, and other property by the said William to the said John was not made to defraud, hinder or delay the creditors of the said William from the collection of their lawful debts, damages and demands, but it devolves upon the plaintiffs to prove the same, or that the same should appear to the satisfaction of the jury from the facts and circumstances of the case given in evidence."

The jury found the issues for the defendants, and thereupon the court dismissed the complainants' bill, on which decree this writ of error is sued out.

The first two of the issues in this case involved the construction of the 1st and the 4th sections of the act concerning fraudulent conveyances.  Without reviewing all the instructions given and refused, it is manifest that the law has not been put to the jury in a manner to obtain a correct verdict.  The first and fourth sections of the act referred to make certain conveyances void, not fraudulent, "but void."  In relation to these, when the acts appear which the law declares shall make a conveyance void, it is deemed to be the duty of the court to declare the enactment of the law to the jury.  The sections referred to will be

construed like any other statute declaring a transaction void. If a conveyance, on the face of it, appears to be for the use of the person making it, as a matter of law the court will declare it void against creditors, just as it would declare a bond conditioned to murder a man or do any other unlawful act. So when it appears that there is a conveyance of chattels or slaves for a consideration not deemed valuable in law and possession, does not really and bona fide accompany such conveyance, and it is not properly recorded, it is the duty of the court to declare to the jury that such conveyance is void against creditors and purchasers. The conveyance, whose validity was involved in the second issue, was certainly for the use of the grantor and was void, unless it can be maintained that a debtor may lawfully convey all his property for the future support of himself and family to the prejudice of his creditors.

From this review of the first and fourth sections of the statute, it is not to be inferred that they alone are applicable to the transactions involved in this controversey, but the other provisions of law which submit the question of fraudulent intent to the jury are not to be overlooked. If the third instruction, given at the instance of the defendant, intended to convey the idea that a valuable consideration, as contradistinguished from one that is both valuable and adequate, is sufficient under the statute, it cannot be sustained; for in all cases of conveyances affecting creditors or purchases, the inadequacy of price is a circumstance of great weight against their validity.

The first three instructions given for the defendants, contained the views above expressed relative to the construction of the statute and were erroneous. The substitution of the word fraudulent for the word void, used by the statute, might have warranted a rejection of some of the instructions of the complainants, though it seems a very nice exception, and the only wonder is, that when the statute law is before the parties, they will not adopt its language instead of their own.

The other judges concurring, the decree will be reversed and the cause remanded.