HALL, Appellant, v. WEBB *et al.*, Respondents.

1. *Quere,* how far is a deed of trust conveying a stock of goods in trade and also all goods and stock that may belong to the grantor during the continuance of the trust valid and operative?

*Appeal from St. Louis Court of Common Pleas.*

This was an action for the possession of certain goods, wares and merchandise in possession of defendants, A. F. W. Webb and John H. Young. The plaintiff Hall sues as trustee under a deed of trust dated January 1, 1852, executed by Restcome P. Perry. This deed of trust was made to secure the payment of two promissory notes for $10,000 each, both dated December 1, 1851, and payable to the order of Thomas & Franklin—one on the first of January, 1855, and the other on the first of January, 1856. By this deed, which was recorded January 28, 1852, the said Perry did " bargain, sell, transfer and deliver unto the said party of the second part, all the stock in trade, goods, wares and merchandise of every kind and description in the hardware store, No. 86 North Main street, in the city of St. Louis, now occupied by said party of the first part, as well as all the goods and stock now in course of transportation belonging to said party of the first part, as also all the stock in trade of every kind which during the existence of this trust shall belong to said party of the first part either in said store or in any other store or place; hereby intending to convey to said party of the second part all the goods of every kind and stock which now belong or may during the continuance of this trust belong to said party of the first part, whether the

same be in said hardware store or in any other store, or in course of transportation; to have and to hold," &c. About the time of the execution of this deed of trust John H. Young became a partner of said Perry. Young continued to be a partner of said Perry until August, 1854, when he sold his interest in the partnership to Perry. Perry at this dissolution agreed to pay the partnership debts and to hold Young harmless. He executed a deed of trust upon the stock of goods to secure Young against his liability for the partnership debts. This deed was dated December 8, 1854, and was made to defendant Webb as trustee. Webb took possession under this deed the latter part of December, 1854. There was evidence tending to show that when the sheriff took possession of the stock of goods in the present suit, there was remaining on hand of the goods in the store on the first of January, 1852, but few packages, worth about eight or ten dollars.

Hall, the plaintiff in the present suit, giving the bond required by statute, took possession of the goods sued for. He sent them to auctioneers and they were sold for $8,445.12.

The court gave the following instructions at the instance of the defendants: " 1. If the jury find from the evidence that, at the institution of this suit, the defendant Young was liable for debts contracted by R. P. Perry & Co. to a greater amount than the value of the property in the possession of said defendants; that said property was delivered by said Perry to said defendants or either of them for the purpose of securing and paying said debts; and that the property in possession of said defendants at the institution of this suit was purchased by said Perry subsequent to the execution and delivery of the deed of trust under which the plaintiff claims, then the plaintiff can not recover. 2. If the jury find from the evidence that the property for the recovery of which this suit is instituted was purchased by the firm of R. P. Perry & Co. (composed of R. P. Perry and John H. Young) after the execution of the deed of trust to the plaintiff; that the said firm of R. P. Perry & Co. was dissolved before the

institution of this suit; that at the time of the dissolution it was agreed that said Perry should pay all the debts for which said firm was liable and should execute a deed of trust on said property to secure the said John H. Young from all liability on account of said debts; that he did execute such deed of trust; that at the institution of this suit the said firm was liable for debts so contracted to a larger amount than the value of the goods in possession of the defendants, then the plaintiff can not recover. 3. Even if the jury shall find from the evidence that there was a package or packages of the value of ten or twelve dollars in the possession of defendants at the institution of this suit, which was in the store of R. P. Perry & Co. at the execution of the deed of trust under which plaintiff claims, the plaintiff can not recover unless he required the defendants to point out said property before the institution of the suit, and defendants refused to do so, and then can recover the above property only, unless they find for the plaintiff under the other instructions given in this case. 4. The jury will find the value of the property at the time it was delivered by the sheriff to the plaintiff, and also assess the damages suffered by the defendants by reason of the property being taken out of their possession, not exceeding the rate of six per cent. per annum on the value of the property from the commencement of this suit until the present time."

The plaintiff asked the court to give the following instructions to the jury: " 1. Usury, even if proved, is no defence to this action. 2. If the jury find from the evidence that R. P. Perry on the 7th day of August, 1854, bought the interest of defendant Young in the firm of R. P. Perry & Co. and continued the same kind of business at the same place and with the stock so bought by him, then the deed of trust given in evidence by the plaintiff attached upon the stock of said Perry, and continued to bind the same until the commencement of this suit. 3. If the jury find from the evidence that the deed of trust given in evidence by plaintiff was executed and delivered before or at the time the part-

nership was formed between himself and defendant Young; that before said partnership was formed said Perry had transacted a hardware business at the same store and his stock constituted the same stock of the said concern at its commencement, and that said Perry on the 7th day of August, 1854, purchased of defendant Young his interest in the concern, and continued to carry on the same kind of business at the same stand, and also continued the stock in said subsequent business, then the said deed of trust continued to bind the stock of said Perry on the 23d day of December, 1854, and until the commencement of this suit. 4. If the jury find from the evidence that the deed of trust and notes given in evidence by the plaintiff were executed by Perry and delivered by him at or about the times of the dates thereof, and that said Perry, either by himself or as a partner of the firm of R. P. Perry & Co., composed of said Perry and said defendant Young, continued to do business in the same store named in said deed of trust, and that in August, 1854, the said firm was dissolved and said Perry purchased from said Young all his interest in said stock and continued the same business at the same place, then all the stock received by said Perry in said store after the said dissolution and purchase is bound by said deed of trust." Of these instructions the court gave the first and refused the others.

The jury found for the defendants and found the value of the property replevied to be $12,374.37, and assessed the damages at the sum of $1,767.38.

*Shepley* and *Polk*, for appellant.

I. The deed of trust was operative to convey to plaintiff all the property and stock of goods in the store at the time of seizure. So far as the grantor was concerned, the after acquired property passed by it; so also as against every body. This was the rule in equity at a very early day. (1 Hare, 560 ; 4 My. & Cr. 408 ; 6 Man. & Grang. 247.) It is now the rule at law. (Abbott v. Goodwin, 20 Maine, 408 ; Maudlin v. Robinson, 11 Ala. 980 ; Floyd v. Morrow, 20

Ala. 356; 14 Conn. 255; 2 Story 630, 555; Pierce v. Emery, 32 N. H. 484; Page & Bacon v. Gardner, 20 Mo. 507.) But even if such a conveyance would not be sustained against creditors, yet defendants occupy no such position. The deed of trust was recorded and defendant Young had actual notice of it.

II. There was no evidence before the jury that authorized the giving of the first instruction asked by the defendants. The property was not delivered to defendants or either of them for the purpose of securing and paying the debts of the firm of R. P. Perry & Co. The third instruction given is erroneous. It left out of view the property in course of transportation. It improperly makes it the duty of the plaintiff to point out the packages in the store at the time of the execution of the deed of trust. It is averred in the petition and not denied in the answer that plaintiff demanded the goods before suit and was refused. If they had any thing belonging to plaintiff, it was their duty to deliver it or offer to deliver it. They refused to deliver any portion.

III. The evidence as to the intention of defendants to send the goods to auction immediately is an element in determining whether the goods brought when sold a fair price; it should have been admitted.

IV. The deed of trust is not void upon its face. The case of Brooks v. Wimer goes to no such extent.

V. Usury can not, even if it exists, be taken advantage of by defendonts.

*Knox & Kellogg*, for defendants in error.

I. The deed of trust was void as creating a trust in favor of the grantor Perry. The necessary consequence of the deed was to hinder and delay creditors. The deed in effect provided that Perry was to remain in possession and buy and sell in the ordinary course of business until default in the payment of the notes secured, which were not payable until three and four years after the execution of the deed. (Brooks v. Wimer, 20 Mo. 503; 15 Mo. 459.) Besides, the

property claimed was acquired after the execution of the deed of trust. (8 Maryl. 301.) At the dissolution Perry assumed the payment of the debts of the partnership, and agreed to secure Young against all liability on account of the debts of the firm, and gave him a deed of trust. Franklin & Thomas were the creditors of Perry only. The whole property was insufficient to pay the firm creditors. The debt due Franklin & Thomas was tainted with usury ; it was therefore void. The facts show that the deed of trust was made with intent to defraud the creditors of Perry.

NAPTON, Judge, delivered the opinion of the court.

The case of Mitchell v. Winslow, 2 Story, 639, referred to in the opinion of this court in Page & Bacon v. Gardner, 20 Mo. 511, can not be reconciled, in all respects, with the decisions of this court in Brooks v. Wimer, 20 Mo. 506, and several subsequent cases reiterating the same doctrine. So far as the case goes to sustain the judgment in Page & Bacon v. Gardner, no exception is designed to be taken to it, as the opinion and judgment in that case is not supposed to conflict with the views expressed in Brooks v. Wimer. But an examination of Judge Story's opinion in Mitchell v. Winslow will show that he entertained views, in relation to assignments, totally adverse to the positions taken by this court in Brooks v. Wimer ; and therefore, although the assignment in the case of Mitchell v. Winslow in many respects resembles the present, Judge Story's opinion upholding it can not be regarded authoritative here. In the case of Moody v. Wright, 13 Metc. 17, the opinion of the supreme court of Massachusetts, wherein Mitchell v. Winslow is reviewed, seems to conform more nearly to the decisions made here, and in truth exactly accords with the theory upon which the present case was tried in the court of common pleas.

It is not necessary to pass upon the validity of the deed of trust made in 1852 to the trustee of Franklin & Thomas, who is the present plaintiff. It was treated as operative in

27—VOL. XXVIII.

the instructions given to the jury so far as the goods in store at its date were concerned. It purported to convey " all the stock in trade, goods, wares and merchandise of every kind and description in the hardware store, No. 86 north Main street, St. Louis, and then occupied by Perry," as well as " all the goods and stock then in the course of transportatation belonging to said Perry ; as also all the stock in trade of every kind which, during the existence of said trust, should belong to said Perry either in said store or any other store or place ; thereby conveying and intending to convey to said trustee all the goods of every kind and stock which then belonged or during the existence of said trust should belong to said Perry," &c. The notes, to secure which this deed was made, were payable in three and four years from date. There can be no doubt that it was the intention of all the parties to this instrument that Perry, the assignor, should remain in possession of his stock of goods thus assigned, and carry on his business as a hardware merchant ; and the facts proved upon the trial fully established that this was understood by all parties as the proper construction of the deed. In this view of the case the instruction given by the court in relation to the small package worth five or ten dollars, which was supposed to be part of the original stock conveyed to plaintiff in 1852, could not have been prejudicial to the plaintiff, and its propriety becomes perfectly immaterial.

But assuming the assignment to Hall as *prima facie* valid, and adopting the principle upon which the case was tried, that the stock on hand in 1852 passed by the assignment, the sheriff would hardly be authorized to take possession of a stock of goods worth twelve or fifteen thousand dollars, because there happened to be in the stock a single package worth ten dollars which he was justified in seizing ; and the effect of a reversal for a misinstruction on this point, if any such had occurred, would only be to reduce the verdict to the extent of the value of this single package. Such a course would only lead to an unnecessary accumulation of costs.

The court committed no error, in our opinion, in exclud-

ing proof of the defendant's supposed intentions in relation to the disposition of the property. What an owner intends to do with his property, whether he designs to sell it at auction or privately, or to retain it for his own use, or to give it away, is not a matter which concerns a trespasser. The point of inquiry is its value, and although the owner may design to destroy it or burn it up the next day, that circumstance does not diminish or in any way affect the responsibility of a stranger who illegally and wrongfully takes possession of it. All the testimony offered in this case concerning the value of the goods, either by auction sales or otherwise, was permitted, and the verdict of the jury has fixed the value at a sum exceeding, indeed, what seems to us as a fair valuation, but which we have no power to change, sanctioned as it has been by the court which tried the case.

Judge Scott concurs. The judgment will be affirmed.