THOMAS GAFF ET AL., Appellants, v. MEYER STERN ET AL., Respondents.

April 18, 1882.

1. A conveyance made in good faith for the purpose of paying one creditor, is not bad because its natural effect is to hinder and delay other creditors.

2. If no trust is attempted to be created to the use of the assignor in any surplus, it is immaterial that his intention was to delay other creditors.

3. A fraudulent purpose of the assignor, as to some creditors, known to the assignee for whose benefit the conveyance is made, renders the conveyance bad.

4. The title of a purchaser is defeated by his participation in the fraudulent intent of the debtor grantor.

5. A judgment will not be reversed because ambiguous declarations of law were given, where the case is tried by the court without a jury.

6. The parties should ask such declarations of law as may enable the appellate court to determine upon what theory of the law the trial court's findings of fact were made.

APPEAL from the St. Louis Circuit Court, THAYER, J. *Affirmed.*

S. HERMANN and GIDEON D. BANTZ, for the appellants: Though a purchaser pay full value, yet if he have knowledge, or means of knowledge, of the fact that the vendor intends to defraud creditors, he is not a purchaser in good faith, and the sale is void against creditors.— *The State to use* v. *Estel,* 6 Mo. App. 9 ; *The State to use* v. *Nauert,* 2 Mo. App. 295 ; *Burgert* v. *Borchert,* 59 Mo. 80 ; *Baker* v. *Bliss,* 39 N. Y. 74 ; Bump's Fr. Conv. ( 1st ed.) 231–233 ; *Little* v. *Eddy,* 14 Mo. 160 ; *Knox* v. *Hunt,* 18 Mo. 180 ; *Johnson* v. *Sullivan,* 23 Mo. 480. Relationship between grantor and grantee is a circumstance throwing suspicion on the transaction.— *Leavett* v. *La Force,* 71 Mo. 356 ; *Kaine* v. *Weigly,* 22 Pa. St. 183. The fact of insolvency alone, *if known to the* purchaser, may be sufficient to put him upon inquiry.— *The State* v. *Merritt,* 70 Mo. 284.

J. M. & C. H. KRUM and WALTER B. DOUGLASS, for the respondents : A payment to one creditor is not void because the debtor intended thereby to hinder others. — *Ames* v. *Gilmore,* 59 Mo. 537.

BAKEWELL, J., delivered the opinion of the court.

Plaintiffs sued Solomon Stern and John Albert, wholesale liquor dealers in St. Louis, by attachment, on the ground of conveyance and assignment of their property with intent to hinder, delay, or defraud their creditors. Mayer Stern and Isaac Stern, of the firm of M. Stern & Company, were in this proceeding summoned as garnishees. The plaintiffs denied the answer of the garnishees ; and set up that Stern and Albert had been engaged, since January 15, 1879, in a systematic plan to swindle their creditors, and that the garnishees were confederated with them in the perpetration of the fraud ; that in pursuance of this plot, on March 5, 1879, Stern and Albert assigned to the garnishees accounts and bills against customers, to the

aggregate amount of $10,000, on which the garnishees collected $2,600. The garnishees traverse this denial. They deny all fraudulent combination with the original defendants. They admit the assignment to them of certain claims; but say that these claims were assigned to them by Stern and Albert for moneys lent by them to the firm, and to secure them against certain liabilities which they had incurred for the firm.

The cause was tried by the court, a jury being waived; and there was a finding and judgment for the garnishees.

The garnishees are brothers of Solomon Stern, one of the defendants in the attachment. The witnesses examined were the defendants in the attachment, the two book-keepers of the firm, and Mayer Stern, one of the firm of garnishees. The testimony is contradictory. The statements of the witnesses are of such a character that it is manifest there was false swearing in the case. Albert, a witness for plaintiff, claims to have been defrauded by Solomon Stern, his former partner, and is manifestly not friendly to him. It is not for us to weigh the evidence. There was testimony from which the trier of the fact might have found a conspiracy to defraud creditors to which Mayer Stern was a party, and the main features of which were suggested by him. But if Mayer Stern is to be believed, there was no such conspiracy to his knowledge, and the trier of the fact had a right to believe Mayer Stern and reject the contradictory statements of Albert.

There was testimony tending to show that, in the spring of 1879, Stern and Albert were engaged together in the wholesale liquor business in St. Louis. Solomon Stern then owed several thousand dollars to Mayer Stern & Co., for moneys borrowed of them, and which had gone into the business of Stern & Albert, as he says. Mayer Stern & Co. were also sureties in bank for Stern & Albert for a large amount. Stern & Albert, knowing themselves to be hopelessly insolvent, bought liquors to a large amount, not

expecting to be able to pay for them. A day or two before their failure, Stern & Albert raised about $4,000 in bank on warehouse-receipts, and with the proceeds paid notes of theirs, held by Mayer Stern & Co., to the amount of $1,500, and a note of $2,500 on which Mayer Stern & Co. were indorsers for their accommodation. Stern & Albert failed on March 8th. They owed about $26,000, and had on hand about $1,000 of liquors.

Four days before their failure, they assigned to Mayer Stern & Co., book accounts of the face value of $10,000, and bills receivable of the face value of $950, on which Mayer Stern & Co. subsequently collected about $3,100, which is less than the debt of Stern to them. The assignment states that Solomon Stern is indebted to various persons: To M. Stern & Co., $4,843; to H. Stern & Co., $1,010; to Emil Wench, $484; to Jacob Schoen, $265. That the firm of Stern & Albert is liable for these demands, and has, through an arrangement of M. Stern & Co. with the Fourth National Bank, procured discounts there, and will be unable to pay the notes; and that, in consideration that M. Stern & Co. assume the indebtedness of Stern & Albert to the creditors named and to the bank, and agree to hold Stern & Albert harmless therefrom, and release all claim that they have against the firm, the assignment is made. At the time of the failure, the books of Stern & Albert disappeared, and were found, after some months, in the office of a lawyer. Appellants claim that the evidence shows that Mayer Stern was engaged in the attempt to conceal these books; respondents contend that no such inference can fairly be drawn from the testimony. Appellants claim that there is an admission that the accounts to Mayer Stern & Co. were for goods sold by Stern & Albert in the month of March, 1879, the month of their failure. There seems to be such an admission as to one account. But even that is not clear. We see no such admission as to the remainder of the accounts.

An instruction was asked by the plaintiffs, and refused by the court, to the effect that if Stern & Albert made the assignment in question with the intent of hindering, delaying, or defrauding the creditors of Stern & Albert, other than the said garnishees, and that the garnishees knew this at the time, the finding ought to be for plaintiffs.

This instruction was properly refused. A conveyance, made in good faith, for the purpose of paying one or more creditors, though its natural effect, and, therefore, the intention of the parties making it, be to hinder and delay other creditors of the assignor, is not void on that account. *The State to use* v. *Laurie*, 1 Mo. App. 371.

A second instruction to the same effect, but on the hypothesis that plaintiffs had enough ground for suspicion to put them on their guard as to the intent of the assignors, was properly refused for the same reason.

A third instruction, embodying the same erroneous proposition, was also refused.

The fourth instruction refused, is to the effect that, if the garnishees had reasonable cause to believe that Stern & Albert were insolvent, and unable to meet their obligations in the regular course of maturity, or were on the point of failing, and were making arrangements to place the property, or a portion thereof, beyond the reach of their creditors ; and if the garnishees, having the means of knowledge of such facts and intents, induced said firm to assume liabilities which Solomon Stern, one of the members of the firm, was under, to said garnishees or their friends, or to pay to them notes which were not yet due, and if this assignment formed a part of such scheme or plans, then such assignment is void as against the creditors of Stern & Albert.

This instruction is also erroneous. A person in failing circumstances has a right to prefer a creditor. He cannot, of course, place the property beyond the reach of all his creditors without fraud. But he has a right to make an assignment for the purpose of paying one creditor, or of

securing one creditor whose claim is not mature, and in doing so, if he places the property beyond the reach of some creditors, he does not place it beyond the reach of his creditors, — that is, of all his creditors, as this instruction assumes.

Where the conveyance is made to pay some existing creditors, and the property conveyed is not more than sufficient to do so, and no trust is created, or attempted to be created, for the use of the assignor, in any surplus after paying the creditors named, it is immaterial that one intention of the assignor in so conveying his property may have been to hinder and delay all his other creditors, or any one of them. On the other hand, though the intention be, by delay, more fully to make the property of the debtor available for the payment of all his debts in full, a conveyance made by one in embarrassed circumstances, to keep the hands of creditors off, so that the estate may be advantageously wound up to pay creditors in full, or to pay the largest possible percentage, is a fraud in law. The creditors have a right to the property of the debtor to satisfy their claims. He is not to cover it up so as to keep them off, though his motive may be their good. He may, however, pay such creditors as he chooses to pay, and, for such purpose, may make conveyances absolute in their character to pay one and another creditor, in whole or in part, leaving other creditors unpaid. This results from the fact that the creditors, as such, have no lien, and from the principle that a man may always apply his own property to pay a debt which he honestly owes. This is the plain doctrine of the Missouri cases. Nor are we aware that any courts hold otherwise. *Robinson* v. *Robards*, 15 Mo. 459 ; *Gates* v. *Labeaume*, 19 Mo. 17 ; *Brooks* v. *Wimer*, 20 Mo. 503 ; *Walter* v. *Wimer*, 24 Mo. 63 ; *Stanley* v. *Bunce*, 27 Mo. 269 ; *Hall* v. *Webb*, 28 Mo. 408 ; *Johnson* v. *McAllister*, 30 Mo. 327 ; *Potter* v. *McDowell*, 31 Mo. 62 ; *The State to use* v. *Benoist*, 37 Mo. 500 ; *Bigelow* v. *Stringer*, 40 Mo.

195 ; *Cason* v. *Murray*, 15 Mo. 378 ; *The State to use* v. *Estel*, 6 Mo. App. 6 ; *Ames* v. *Gilmore*, 59 Mo. 537.

The court, of its own motion, gave the following declarations of law : —

1. " If the assignment of the accounts and notes in question was made and contrived by and between the garnishees, and one or more members of the firm of Stern & Albert, as part of a scheme to enable Stern & Albert to either hinder, delay, or defraud any of their creditors ; or, if Stern & Albert intended thereby to hinder, delay, or defraud creditors, and garnishees had notice thereof, and said assignment in question was not accepted by said garnishees in good faith for the single purpose of securing debts owing to them by said firm of Stern & Albert, or by some member thereof, then such transfer was void, and the plaintiff may recover."

2. " Though the purpose of Stern & Albert was fraudulent as respects other creditors than garnishees, and the garnishees had knowledge thereof, or of such facts as would put a prudent man on inquiry, yet such facts will not warrant a verdict for the plaintiffs, if the court further believes that garnishees were creditors of Stern & Albert, or some member thereof, and accepted said assignment in good faith for the single purpose of securing their own debt, and not for the purpose of aiding in the accomplishment of a fraud upon the creditors of Stern & Albert."

3. " Though some part, or all, of the debt intended to be secured to the garnishees by the conveyance or assignment in question, was the individual debt of one of the members of the firm of Stern & Albert, yet, if, prior to said conveyance, the firm of Stern & Albert had assumed such debt, or consented to its payment out of firm assets, the garnishees had thereafter the same legal right to take steps looking to the security of such debt by the pledge of firm assets, as if said debt had been originally contracted by the firm."

The second instruction is not very clearly expressed. We have no doubt that if the purpose of Stern & Albert was fraudulent as to their other creditors, and Stern & Co. had notice of this fraudulent intent at the time, the conveyance to Stern & Co. was bad. The title of the purchaser would be defeated by his participation in the fraudulent intent of the grantor. *Ames* v. *Gilmore*, 59 Mo. 537; *Durkee* v. *Chambers*, 57 Mo. 575; *Henderson* v. *Henderson*, 55 Mo. 534. Though Stern & Albert may have been honestly indebted to Stern & Co., yet, if, at the suggestion of Mayer Stern, they bought goods on credit, not intending to pay for them, sold these goods, and assigned their claims against the vendees to Stern & Co. to pay their indebtedness to Stern & Co., the fact that they really owed Stern & Co. would not make such an assignment good, if Stern & Co. were parties to the fraud by which the goods were obtained. And the single purpose of Stern & Co. to make themselves whole for a *bona fide* claim of theirs against Stern & Albert would not suffice to uphold the assignment.

Counsel for appellant seems to consider that the declaration of law given by the court and numbered two, is susceptible of the construction that, even if Stern & Co. and Stern & Albert conspired together to get goods on credit through Stern & Albert, to satisfy the debt of Stern & Albert to Stern & Co., the assignment in evidence was good. That is not the law of the case. But we cannot see that that meaning can fairly be deduced from the declarations of law given. If the garnishees had notice of a fraudulent design of Stern & Albert in the very matter of making the assignment, it does not appear how they could have accepted the assignment in good faith. But, where there is no question of misleading a jury, a judgment is not to be reversed merely because declarations of law given by the court of its own motion, are ambiguous. It was for counsel who complain of the judgment to ask such declarations of law that we could clearly see from the action of

the trial court in giving or refusing them, what was the view of the law applicable to the facts of the case taken by the trial judge.

The finding in this case was not unwarranted by the evidence, and there is nothing preserved from which we can clearly see that the views of the learned judge of the trial court as to the law were not in accordance with those which we have expressed in this opinion. The judgment will therefore be affirmed. All the judges concur.