MARY F. HOYT, Plaintiff in Error, v. W. DAVIS ET AL., EXECUTORS, Defendants in Error.

### St. Louis Court of Appeals, March 9, 1886.

1. EVIDENCE—HUSBAND AND WIFE—PRIVILEGED COMMUNICATIONS.—A paper, in the wife's handwriting, found among her deceased husband's papers, addressed "to whom it may concern," and which speaks of her husband in the third person and explains the cause of their separation, is not a privileged communication.

2. PRESUMPTIONS—NAMES.—Identity of name raises a presumption of identity of person, and it devolves upon him who denies the identity to overcome this presumption.

3. ADMINISTRATION—WIDOW—DOWER.—The personal estate allowed the widow out of her deceased husband's estate under section 2189, of the Revised Statutes, is dower within the meaning of section 2204 which bars jointure and dower in cases where the wife has continued to live with an adulterer.

4. ―――――― Section 2204, of the Revised Statutes, does not apply to cases where the wife, after the husband's desertion of, and failure to provide for, her, and his pretended marriage with another, goes away and lives with an adulterer.

5. ―――――― PRACTICE—TRIAL BY JURY.—A petition by a widow for that portion of her husband's estate to which she is entitled under section 2189, of the Revised Statutes, is triable by a jury, if one be demanded, on trial de novo, in the circuit court, on appeal.

6. ―――――― INSTRUCTIONS.—Either party is entitled to have appropriate declarations of law given, in such a case, where the question is tried by the court without a jury.

ERROR to the Shelby County Circuit Court, THEO. BRACE, Judge.

*Reversed and remanded.*

W. O. L. JEWETT, for the plaintiff in error: By the common law "dower" is an interest in lands, a life estate, and is so defined by all law writers, and by the decisions of our courts. Redfield on Wills (4 Ed.)

379 ; 4 Kent (3 Ed.) 35 and 36 ; Cruise, Digest Real
Prop. (4 Am. Ed.) 162 ; *Wigley v. Beauchamp*, 51 Mo.
544 ; *Bryant v. McCune*, 49 Mo. 546. Our statutory law
is based upon the common law. *Hamilton v. O'Neil*, 9
Mo. 17. By the common law the widow had dower, and
elopement and adultery were not a bar. By statute
Westminster two, they were made a bar. Section 2204
is an adoption of the Westminster statute by our legis-
lature, and first became law in this state in 1825.
*Lecompt v. Wash*, 9 Mo. 551. The word "dower" then,
and ever since, had a well defined and unambiguous
meaning; hence there is no room for construction.
*The State v. King*, 44 Mo. 283 ; 1 Kent (3 Ed.) 462.
The wife was abandoned by the husband and hence
section 2204 does not apply. *McAlister v. Novenger*, 54
Mo. 251 ; *Payne v. Dotson*, 81 Mo. 145.

B. F. Dobyns and R. P. Giles, for the defendants
in error : The two provisions of the act of 1835 and
that of 1841 were embodied in section two of chapter fifty-
four, Revised Statutes, 1845, except that the words "take
dower" do not occur as in the supplemental act of 1841,
but the words "entitled absolutely to a share" do occur,
as in the act of 1835. But the words, "entitled abso-
lutely to a share," having received a legislative exposi-
tion by the act of 1841, can have no other signification in
their connection with the subject in the statute of 1845,
which purports to be a re-enactment of the law of 1841.
*Hastings v. Myers*, 21 Mo. 519, and *Hayden · v.
Hayden*, 23 Mo. 398. Section 36, page 88, Wagner
Statutes, says that the four hundred dollars allowed the
widow shall be deducted from her dower in the personal
estate if there be any. *McFarland v. Baze*, 24 Mo.
156. The plaintiff in this case can claim as doweress
only and not as distributee. *Davis v. Davis*, 5 Mo.
189 ; *McLaughlin v. McLaughlin*, 16 Mo. 250. The
finding and judgment are amply sustained by the
evidence, from which it appears that the plaintiff

voluntarily left her husband, by refusing to go with him from her father's house, and that the plaintiff, and after such voluntary separation, went away with William Davis, an adulterer, and continued with him in adultery, and that no reconciliation ever afterwards took place between the plaintiff and her husband. *McAlister v. Novenger*, 54 Mo. 251; *Payne v. Dotson*, 81 Mo. 145; 1 Scribner on Dower, 532-3. But if the court should hold, as contended for by the plaintiff, that she takes in this case as distributee, and not as doweress, then her husband, Moulton Hoyt, did not die intestate as to her, but had a perfect right to exclude her, as he did, by his will read in evidence, from any interest in his personal estate, and for this reason the judgment of the circuit court should be affirmed. Wagner Statutes, 1365, sect. 9; *Davis v. Davis*, 5 Mo. 189.

THOMPSON, J., delivered the opinion of the court.

The plaintiff filed her petition in the probate court of Shelby county, claiming one-half of the personal estate of her deceased husband under the provision of section 2189, Revised Statutes. The only defence was, that the wife was barred of her right to this share in the personal estate of her deceased husband under the provision of section 2204, Revised Statutes, by reason of having voluntarily left her husband and continued with an adulterer. On appeal to the circuit court the cause was tried before the judge sitting as a jury, and there was a verdict and judgment for the defendants.

The defendants, who had the burden of proof, offered evidence tending to show that the plaintiff and the deceased, being husband and wife, had separated, and that thereafter the plaintiff had entered into a pretended marriage with one Davis; had had a child by him, and that she had never been reconciled to her husband. On the other hand, the plaintiff offered evidence tending to show that, in 1854, while she and her husband were living together at the residence of her

father at Griggsville, Illinois, he, making no charge of criminality against her, had abandoned her, saying he could not live with her; that he had, on the twenty-ninth day of June, 1854, entered into a pretended marriage in Knox county, Missouri, with one Emily McLean, and that he and the plaintiff had never there-after been reconciled to each other. The plaintiff's witnesses admitted that, one or two years after the plaintiff's husband had thus abandoned her, the plaintiff had entered into an adulterous relation with one Davis.

As the case must go back for another trial we think it proper to say, with a view of saving the necessity of another appeal or writ of error, that in this evidence two documents were presented, one by the defendants and the other by the plaintiff, which were objected to in each case by the opposing party, but which were nevertheless admitted. The first was a long letter dated Griggsville, August 6, 1861, shown to have been in the handwriting of the plaintiff, including the signature, and to have been found among the papers of the deceased by his executor. It was addressed, "To all whom it may concern." It expressed great love for her husband, great sorrow and anxiety at being separated from him, extolled his character and conduct, exonerated him from blame in respect of the separation, put the blame of the separation upon her parents, but did not contain any accusation against herself of improper conduct. Among other things the letter contained this clause: "He has not deserved such treatment as he has received from my parents; they have been the whole cause of our separation by refusing to let me go away with him." We are of opinion that, in the absence of any evidence tending to show that this was intended as a private communication between husband and wife, other than the fact that it was found among the husband's papers after his death, the learned judge committed no error in declining to exclude it as a privileged communication. It was not

addressed by the plaintiff to her husband; it nowhere spoke of him in the second person; it was in the form of a narrative, speaking of him everywhere in the third person; and it was addressed, "To all whom it may concern." If it was committed by her to him in the first instance, it was manifestly intended by her that it should be exhibited by him to such persons as should be "concerned" in knowing the causes of their unhappy separation, and was, therefore, not a privileged communication. It "concerned" the defendants that it should be read in evidence, and, as it contained an important admission against the plaintiff, bearing upon the issue upon trial, it was properly so read.

The other instrument of evidence was offered by the plaintiff and admitted notwithstanding the defendants' objection. It was a transcript of a certificate of marriage from the records of Knox county, Missouri, and read as follows:

"STATE OF MISSOURI, } ss.
"COUNTY OF KNOX.

"Be it remembered that I have this day united in the bonds of matrimony, according to law, Moulton Hoyt and Emily McLean, in the state and county aforesaid.

"Given under my hand this twenty-ninth day of June, 1854.

"JABEZ BARNES,
"Justice P."

The objection to this instrument, that the Moulton Hoyt named therein had not been identified as the plaintiff's husband is not tenable, because identity of name raises a presumption of identity of person, and it is for the party denying such identity to overcome the presumption by evidence. *Flournoy v. Warden*, 17 Mo. 435; *Gitt v. Watson*, 18 Mo. 274; *The State v. Moore*, 61 Mo. 276; *Phillips v. Evans*, 64 Mo. 17, 23.

The substantial questions which have been presented by the plaintiff in error arise upon the rulings of the circuit court in refusing certain instructions requested

by her. It is not necessary to set out these instructions at length; it is sufficient to say that they embody in apt words the following propositions: (1) That the share in the personal estate of her deceased husband allowed the wife by section 2189, Revised Statutes, is neither dower nor jointure within the meaning of section 2204, Revised Statutes, which bars jointure and dower in cases where the wife has gone away and continued with an adulterer. (2) That section 2204, Revised Ssatutes, has no application to a case where the husband abandons and deserts his wife, makes no provision for her support and maintenance, and enters into an adulterous relation with another woman, and thereafter the wife enters into an adulterous relation with another man. (3) That the statute has no application in a case where a husband abandons and deserts his wife and makes no provision for her support and maintenance, and she thereafter goes away with an adulterer and continues to live in adultery with him.

I. That the provision contained in section 2189, Revised Statutes, is not jointure, need not be argued. 1 Williams Real Prop. 234. The first question, then, is whether the share of the widow in the personal estate of her deceased husband, given by this section, is "dower" within the meaning of section 2204. We are of opinion that it is. An examination of the legislation of this state relating to this subject, for which we are indebted to the painstaking argument submitted by the counsel for the defendants, shows that the provision made by the statute for the widow out of the personal estate of her deceased husband has always been spoken of and regarded as dower since territorial times. The decisions of the supreme court from an early period likewise speak of this provision as "dower," or as "dower in personalty." *Davis v. Davis*, 5 Mo. 183; *McLaughlin v. McLaughlin*, 16 Mo. 242; *Stone v. Stone*, 18 Mo. 389; *Haslings v. Myers*, 21 Mo. 519; *Hayden v. Hayden*, 23 Mo. 398; *Tucker v. Tucker*, 29 Mo. 350; *McFarland v.*

*Baze*, 24 Mo. 156 ; *Pemberton v. Pemberton*, 29 Mo. 408 ; *Cummings v. Cummings*, 51 Mo. 261 ; *Griffith v. Canning*, 54 Mo. 282 ; see, also, to the same effect *Straat v. O'Neil*, 13 Mo. App. 581. The further fact that the two sections under consideration, the one granting the right (Rev. Stat., sect. 2189), and the other barring it (Rev. Stat., sect. 2204), have appeared in the last three authorized revisions of our statutes in the chapter relating to dower (Rev. Stat. 1855, chap. 56, sects. 4, 20 ; Rev. Stat. 1865, chap. 130, sects. 4, 20 ; Rev. Stat. 1879, sects. 2189, 2204), is a very persuasive consideration in support of the same conclusion. Nor is the opposing argument that section 2204, Revised Statntes, is but a re-enactment of the statute of Westminster, of prevailing force, because it does not follow the language of the statute of West-minster, which in terms barred the wife's action for dower "that she ought to have in her husband's lands," and because our statute bars jointure, which the statute of Westminster did not. *Seagrave v. Seagrave*, 13 Ves. 443. Nor is the argument that our statute ought to be strictly construed because in derogation of the common law, which did not bar dower for this cause, well taken ; because the right to the share in her deceased husband's personal estate given by our statute (Rev. Stat., sect. 2189), did not exist at common law. Moreover, the argument that the right given by section 2189, Revised Statutes, is not a right to dower, but a mere right to a distributive share in the personal estate of the deceased husband, proves too much for the plaintiff's case ; because, if this is the nature of the right, it is cut off by the will of her deceased husband, under which the defendants claim, which will was put in evidence in this case, and which leaves nothing to the plaintiff.

But if we reason upon the broader ground of the manifest purpose and policy of the statute, it admits of no distinction between the wife's right to dower in her

deceased husband's realty and her share in his personalty, by whatever name the latter may be called. The statute is founded upon a principle of sound morality and public policy, which admits of no distinction founded upon the difference between real and personal property. That principle is that the wife, who wholly repudiates her marital obligation by abandoning her husband and living with an adulterer, and who is not subsequently received back by him, forfeits thereby all right and interest in his estate after death, of whatever description, which the law vests in her in her character of wife. She can not repudiate, while her husband lives, all the obligations of the marital relations, and take all the benefits which remain after he dies.

II. The second and third propositions embraced in the instructions requested by the plaintiff and refused by the court may be considered together; because we are of opinion that the third proposition is a sound one, and if this proposition is a sound one, the second must for stronger reasons be a sound one. It will be remembered that the third proposition is, that the statute has no application in a case where a husband abandons and deserts his wife and makes no provision for her support and maintenance, and she thereafter goes away with an adulterer and continues to live in adultery with him. That this is a correct proposition of law was decided in *Payne v. Dotson* (81 Mo. 145). Not only was this proposition expressly decided in that case, but the whole course of reasoning in that case and in the case of *McAlister v. Novenger* (54 Mo. 251), shows that the statute can have no application where the husband has first repudiated his marital obligations by abandoning his wife and casting her upon her relations or upon the world. If this is so, then for stronger reasons, the statute can have no application where, in addition to abandoning the wife in the first instance, the husband immediately contracts a pretended marriage with another woman, which circumstance in itself dis-

ables the wife from following him and resuming marital relations with him. The second of the above propositions is, therefore, held to be sound law.

We do not understand the ground upon which the learned judge refused the instructions which were tendered by the plaintiff embracing these two propositions (for they were clearly applicable to the evidence), unless he proceeded upon the view that this was a case where declarations of law need not be given, or else upon the view that the office of declarations of law, instead of indicating the principles of law on which the court proceeds, is to indicate its views upon the facts. This action was triable by a jury, had a jury been demanded (Rev. Stat., sect. 3600), and, therefore, it was a case where appropriate declarations of law might be required by either party. Rev. Stat., sect. 3655. Where a court sits as a jury declarations of law (called "instructions" in the statute), may be required by either party upon substantially the same principles as where the case is tried before a jury ; they are necessary to inform the reviewing court of the views of law upon which the trial court proceeded to judgment, the law which the court applied to the facts which the evidence tended to prove. *DeGraw v. Prior*, 53 Mo. 313; *Gaff v. Stern*, 12 Mo. App. 115. And where, as in this case, the evidence is conflicting, it is very material for the reviewing court to know what those views of the law were.

The judgment of the circuit court will be reversed and the case remanded. It is so ordered. All the judges concur.