THE STATE OF MISSOURI, to use of FREDERICK MEYROSE, Appellant, *v.* JOSEPH S. LAURIE *et al.*, Respondents.

### March 7, 1876.

A conveyance made with the intent, in good faith, of paying one or more creditors, though its natural and necessary effect be to hinder and delay other creditors, is not, therefore, void in Missouri.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Fisher & Rowell*, for appellant, cited : State *v.* Bennett, 37 Mo. 500 ; Sibley *v.* Hord, 3 Mo. 290 ; Cason *v.* Murray, 15 Mo. 378 ; Bump on Fr. Conv. 217, 221, and cases cited ; State *v.* Lebaume, 19 Mo. 29 ; State *v.* Benoist, 37 Mo. 500 ; Bigelow *v.* Sturges, 40 Mo. 195 ; Thomas *et al. v.* Bobb, 45 Mo. 387.

*Joseph S. Laurie*, for respondents, cited : Reed *v.* Pelletier, 28 Mo. 177, 178 ; Bump on Fr. Conv. 70, 71, 232, 282, 283, 478 ; Murray *v.* Cason, 15 Mo. 379 ; Little *v.* Eddy, 14 Mo. 160.

BAKEWELL, J., delivered the opinion of the court.

Frederick Meyrose, to the use of whom plaintiff sues, claimed certain goods, valued at $843, which had been taken on execution as the property of one Blutevogel. The defendant gave the bond required by the statute, and the present suit is upon that bond. Respondents denied that Meyrose was the owner of the goods at the time of the levy and sale.

The evidence showed that Meyrose took a conveyance of the goods, knowing that Blutevogel was in embarrassed circumstances at the time. It appears that Blutevogel kept a small tailor-shop in St. Louis ; that Meyrose was a journeyman in his employ ; that Blutevogel owed Meyrose some money, and owed him, also, something for work. Meyrose and Blutevogel differ in their testimony as to how much was due for work and how much for money borrowed, but both agree that $600 was due altogether, and that this debt formed the consideration of two notes executed by Blutevogel to Meyrose, each for $300, one given in December, 1869, and the other in January, 1870. On April 15, 1870, Blutevogel sold out his establishment to Meyrose for $1,078, which is said to have been paid partly by the return of these two notes, partly by a note given by Meyrose for $300, partly by $75 paid by Meyrose to a creditor of Blutevogel, and the remainder in cash. The price paid was the invoice price of the goods, ascertained at the time by taking

an inventory. The sign was at once changed, and Meyrose took full and exclusive possession of the store.   On May —, 1870, defendants Crews and Laurie obtained judgment against Blutevogel, and immediately caused an execution to be issued, and levied on the stock which Meyrose had pur-chased, as he claims, from Blutevogel a few weeks before. There was some testimony tending to show that, at the time of the alleged transfer of the stock to Meyrose, he had knowl-edge of the particular indebtedness of Blutevogel for which the judgment under which the execution on which this levy was made was subsequently obtained.   There is, also, evi-dence tending to disprove any such actual knowledge, on the part of Meyrose, of this particular debt.

The instructions given on each side are set out in the opinion below, as well as those asked by the plaintiff and refused.   There was a verdict and judgment for defendants, and plaintiff, having duly saved every exception, his motion for a new trial being overruled, brings the case here by appeal.

The  following  instruction, asked by plaintiff, was refused :

" The court instructs the jury that, before they can find from the evidence that the sale from Blutevogel to Mey-rose was made to hinder, delay, or defraud creditors, they must be satisfied from all the evidence in the case that such was the intention of said Blutevogel in making the sale, and that such was also the intention of said Meyrose in making the purchase ; and, although they may find that such was the design of Blutevogel in making said sale, unless they further find that said Meyrose participated in, or was cognizant of, said fraudulent design, they cannot find that said sale was so made in fraud of creditors."

Certain instructions asked by defendant were also refused. These it is not necessary to comment upon or set out.

The law applicable to the case was declared by the court

to be embodied in the following instructions, asked by the plaintiff and defendants, respectively.

Plaintiff's instructions:

1. "The jury are instructed that, if they find from the evidence that the goods taken from the possession of Meyrose were his property, and were not returned to him after filing his claim, or not tendered to him, and by him refused, they will find for the plaintiff the full value of the goods, notwithstanding some portion of said goods were not, in fact, sold under the execution by which the levy was made, but on other executions against Blutevogel."

2. "The court instructs the jury that the plaintiff was entitled to recover of the defendants for the value of the goods taken from his possession by the constable, and interest from the time of filing his claim herein, at the rate of 6 per cent., unless the jury shall be satisfied from all the evidence in the case that the sale from Blutevogel to Meyrose was fraudulent, or made to hinder, delay, or defraud creditors of said Blutevogel; and the sale aforesaid will be deemed *bona fide* and honest unless it is proven to be fraudulent, and the burden of so proving it is upon the defendant."

3. "The court instructs the jury that the change of possession required by law to make a sale valid does not require that the goods shall be actually removed from one place to another, but it will be a sufficient compliance with the law if there be some unmistakable sign of such change of possession, such as taking an invoice, or putting up a new sign, or any other reasonable means which would impart notice to a prudent man that a change of possession had taken place."

4. "Although the jury may find that Blutevogel may have intended to hinder, delay, or defraud his creditors by the sale of the goods in question to Meyrose, it does not affect the rights of said Meyrose under said sale, unless they find

further that said Meyrose—knowing such intention on the part of Blutevogel—meant by such purchase to aid and assist said Blutevogel in so defrauding his creditors, and not merely to honestly secure his own debt.''

5. '' The court instructs the jury that, if they believe from the evidence that Blutevogel made the sale of the stock of goods in controversy to Meyrose with the *bona fide* intention of preferring one or more of his creditors to the exclusion of the others, he had, under the law, [a right] to make such preference, and said Meyrose had a legal right to accept such preference, and such a transfer is not fraudulent, or made to hinder, delay, or defraud creditors, although it may have included all of said Blutevogel's property, and although all the other creditors of said Blutevogel may have been left unpaid by reason of said transfer, and although said Blutevogel may have been insolvent at the time of said transfer.''

Instructions given at the instance of defendants:

1. '' The jury are instructed that, if they believe from the evidence that Blutevogel conveyed the goods in question to Meyrose with intent to hinder, delay, or defraud his creditors, and that Meyrose participated in such intent, then plaintiff cannot recover, even though he may have paid full value for said goods.''

2. '' The jury are instructed that, intent being an operation of the mind, its nature and character cannot be directly and positively proved as a tangible fact, but can only be determined from the acts of the parties, taking into consideration all the facts and circumstances of the case. The law presumes that every man intends the natural and legitimate consequences of his own acts; therefore, if a party in failing circumstances makes a sale or transfer of his property, the natural consequence of which is to hinder, delay, or defraud his creditors, the law presumes and declares that his intent in doing so was fraudulent as to creditors.''

The jurors are the proper judges of the evidence, and, though we may think that the verdict in this case was against the weight of the evidence as set forth in the bill of exceptions, we would by no means interfere with it did we not think that it was induced by the giving of the second instruction marked for defendants, the propriety of which cannot be maintained. There is a sense in which that instruction is true, but that sense is contrary to its obvious import, and instructions should not be so given as to leave the jury to conjecture their meaning. Neither is it enough that it was, in effect, corrected by the other instructions (particularly the fifth instruction) given for the plaintiff. This was early ruled by the Supreme Court, and in a case somewhat similar to the one at bar, where a like error had been committed by the trial court. *Jones* v. *Talbot*, 4 Mo. 279. Nor does it save the instruction that it uses the very words of the statute, especially where the use of these words, without explanation, has, as in this case, a tendency to mislead. The plain, obvious meaning of the instruction upon which this comment is made was a direction to find for defendant, if Blutevogel made a conveyance for the purpose of paying, in good faith, two creditors in full, leaving other debts unprovided for, and leaving no assets to meet them. The "natural" consequence of an act is the consequence which follows from the nature of the act itself. If, then, the conveyance made by Blutevogel by its nature delayed creditors, we are told in this instruction that it was fraudulent and void. Confessedly the conveyance was a preference made by an insolvent; it, therefore, necessarily delayed the creditors not paid, or not preferred; but it was not, therefore, void, because our law permits a preference, though the United States bankrupt law does not. That law, however, had of course no bearing on this case.

Every conveyance made with intent to "hinder, delay, or defraud creditors," is void as against creditors, by statute, in this State; but preference of a creditor by an insol-

vent clearly, necessarily delays and hinders other credit- ors, and must, therefore, have been made with that intent. There is, then, a sense in which it is true to say that a con- veyance made with intent to hinder or delay creditors is *not* void under our law.   If A purchase of B, for a valua- ble consideration, to secure himself, the purchase will not be bad merely because A knew at the time that B was greatly indebted and in insolvent circumstances.   A conveyance of property may, therefore, have the effect of hindering and delaying creditors, in a certain sense—that is, of hindering and delaying some creditors of the insolvent—but, if made in good faith, it will not necessarily be void on that account. *Gates* v. *Labeaume,* 19 Mo. 17.   A conveyance made with the intent of hindering and delaying the creditors (in the sense of *all* the creditors) of the insolvent, and which had that tendency in fact, would be bad; but a conveyance made with the intent of paying some creditors, or one creditor, though it might necessarily hinder and delay other creditors, and must, therefore, have been made with that intent also, and was, therefore, actually made to hinder and delay creditors—that is, some creditors of the insolvent— would not be bad on that account.   Take the case that A owes $10,000 to ten creditors, $1,000 to each, and has but $1,000 worth of property to distribute; he may pay B in full, by conveying to him all his assets, though this will necessarily hinder the nine other creditors, and, this being the natural and necessary consequence of the act, such an actual intention is proved by the conveyance itself.   But if the conveyance to B is made in good faith, to pay an existing debt, it is good enough, and no violation of the statute as to fraudulent conveyances.   On the other hand, a conveyance made to hinder all creditors is bad and fraudu- lent in law, however honest the intention, and even though the intention be, by the delay itself, more fully to discharge the debts; and a deed that tends thus to hinder and delay creditors, made by one in embarrassed circumstances, how-

ever good his motive, will be bad, even though the person making it be not insolvent at the time, if he be afterwards unable to meet his debts due at the time of making the conveyance. *Potter* v. *McDowell*, 31 Mo. 62 ; *State, use, etc.,* v. *Benoist*, 37 Mo. 500 ; *Bigelow* v. *Stringer*, 40 Mo. 195.

There is no error in refusing the instruction asked by plaintiff and refused, as it is substantially given in instruction number four, given at plaintiff's instance ; but, for the error in giving the instruction for defendants, marked number two, the judgment must be reversed and the cause remanded. The other judges concur.