ST. LOUIS COFFIN COMPANY, Respondent, *v.* G. A. RUBEL-
MAN ET. AL., Appellants.

March 4, 1884.

1. PRACTICE — VERDICT — JUDGMENT. — The court may enter judgment
against R on a verdict against R & Co., where R and another being co-
partners as R & Co., R alone is summoned and answers as garnishee,
and where no effects are attached except in his hands.

2. —— GARNISHMENT — CHANGE OF ISSUES — TRIAL. — In a garnishment
proceeding it is immaterial, after verdict, there being no question of sur-
prise, that the parties disregard the issues made by the pleadings, and
try the cause on issues made at the trial and indicated in the instructions.

3. FRAUDULENT CONVEYANCES — DEBTOR AND CREDITOR. — The whole trans-
action is void, where the creditor, in addition to the taking of enough
of the debtor's goods to satisfy his claim, purchases an additional
quantity for the purpose of aiding the debtor in concealing his property.

4. —— A creditor may purchase of his debtor more property than enough to
satisfy his claim, where it is understood between them that the purchase
money shall be, and it is, applied to the payment of the obligor's liabili-
ties.

5. —— A conveyance made in good faith to pay one creditor, may be valid,
though its necessary effect is, and is intended to be, the hindrance of
other creditors of the insolvent debtor.

APPEAL from the St. Louis Circuit Court, THAYER, J.
*Reversed and remanded.*

HENRY W. BOND and G. D. BANTZ, for the appellants :
The court improperly amended the verdict. There was no
judgment as to one of the defendants.—2 Saund. (Eng.) 212,
note 4 ; 2 Hill (N. Y.), 332 ; 48 Conn. 520 ; 45 Texas, 220–
226 ; 2 Saund. 212 ; 5 Mass. 1 ; 1 Ld. Raym. 324, 600 ; 3 Mo.
390 ; 2 Mo. App. 571 ; affirmed, 7 Mo. App. 89 ; 17 Ga. 361 ;
12 Ill. 84 ; 37 Ill. 164 ; 2 Hill, 332 ; 4 Yeates (Penn.), 293 ;
2 Strange, 1089 ; 23 Mo. 389 ; 5 Mo. 51 ; 19 Mo. 442. It
would be too great a restriction upon the common business
and traffic of men, if every purchase from a debtor were to
be conclusively invalidated, because the proceeds were sub-
sequently misapplied. Bump on Fr. Conv. 237 ; *Brown v.*

*Smith*, 7 B. Mon. 361; *Brown* v. *Force*, 7 B. Mon. 357; *Donnell* v. *Byrne*, 69 Mo. 468. We, moreover, insist that even where it appears that a creditor who is seeking, *bona fide*, the payment of his debt, advances money to his debtor, agreeing to take additional property therefor, and knew at the time that the debtor intended to withhold the money so obtained from his other creditor, that even in that event the purchase will not be fraudulent, if it appears that the creditor had reasonable ground to apprehend, and, in fact, believe, that unless he resorted to such expedients he would be unable to secure a preference from his debtor. — 60 Penn. 430; 94 Penn. 316; 44 Mich. 496–499; 50 Ga. 213; 5 B. Mon. 307; 3 B. Mon. 550–559; 32 Vt. 139; 73 Mo. 74.

Chas. B. Stark and A. Moore Berry, with whom is T. A. Russell, for the respondent: If a creditor takes from his debtor a conveyance of property no more than reasonably sufficient in amount to pay an honest debt, and, as a part of the same transaction, advances money to his debtor and takes property therefor over and above that which he takes specifically to pay his debt, and it is the intention of the debtor at the time to defraud his other creditors, and the creditor has knowledge of such facts and circumstances as would induce a reasonable man to believe his debtor intended thereby to commit a fraud, the conveyance is void as to the other creditors, notwithstanding the creditor may have promised to advance the money before he had notice of the fraud. — *McNichol* v. *Richter*, 13 Mo. App. 515; *Kuykendall* v. *McDonald*, 15 Mo. 416–420; *Potter* v. *McDowell*, 31 Mo. 62–74; *Allen* v. *Berry*, 50 Mo. 90; *Shelley* v. *Boothe*, 73 Mo. 74; *Arnholt* v. *Hartwig*, 73 Mo. 485. Where no objection is made by demurrer or motion to a misjoinder of causes of action, or improper union of different causes of action in one count in the petition, the defect is waived and objection comes too late after verdict. — Rev. Stats. 1879, sect. 3519; *House* v. *Lowell*, 45 Mo. 381; *Williamson* v. *Fisher*, 50 Mo. 198; *Pomeroy* v. *Benton*, 57 Mo.

531–551; Whittelsey's Pr., Myer's Sup., sect. 161, p. 72; *Union Bank* v. *Dillon*, 75 Mo. 380–382. The court may, at any time before or after judgment, amend any record in furtherance of justice by striking out the name of a party or correcting a mistake in any other respect. — Rev. Stats. 1879, sects. 3567, 3569, 3570; *Thompson* v. *Mosely*, 29 Mo. 477–479; *Parry* v. *Woodson*, 33 Mo. 347–348; *Cruchon* v. *Brown*, 57 Mo. 38; *Weil* v. *Simmons*, 66 Mo. 617–619; *Jackson* v. *Bowles*, 67 Mo. 609–613.

BAKEWELL, J., delivered the opinion of the court.

Plaintiff began suit against Richter, on which it obtained judgment on February 14, 1882, for $1,001.09. Pending this action, plaintiff sued out an attachment in aid. The sheriff's return to this writ shows that he executed it by declaring in writing to G. A. Rubelman & Co., by G. A. Rubleman, a member of said firm, that he attached in their hands all debts due from them to defendants, and all goods, moneys, effects, rights, credits, chattels, choses in action, and evidences of debt of the defendant Fritz Richter, or so much thereof as would be sufficient to satisfy the debt, interest, and costs in the suit; and he at the same time further executed the writ by summoning G. A. Rubelman & Co. as garnishees by declaring to them in writing that he summoned them, etc.

The answer purports to be the answer of George A. Rubelman & Co., and is signed and sworn to by George A. Rubelman. All the interrogatories, except the last, are answered in the negative. To the last, the answer is that Richter sold to Rubelman & Co., in July, 1881, personalty worth $3,000, which sale left him indebted to Rubelman & Co. about $400 or $500.

Plaintiff's denial of the answers of the garnishees, after a specific denial of each answer, sets up that in July, 1881, defendant Richter, being indebted and insolvent, made to the garnishees, Rubelman & Co., a pretended sale and de-

livery of two stores and other personal property, for a pretended consideration of $3,000, which was all the property of Richter subject to execution, and then worth over $7,000; that this sale was fraudulent, and made for the use and benefit of Richter, and without consideration, all of which was then known to said Rubelman & Co., who conspired with Richter to hinder, delay, and defraud the creditors of Richter. Plaintiffs further allege that said garnishees had, at the time of the garnishment, and still have in their possession, money, credits, effects, and chattels of Richter worth $7,000, to which they have no legal claim whatever, and for which they are indebted to him.

The jury returned the following verdict: "We, the jury, find the issues joined herein between the plaintiff and the defendant garnishees, in favor of plaintiff; and we assess the total value of the money, property, and effects of Fritz Richter in the garnishee's hands at the date of the garnishment, on September 17, 1881, to be $3,000.

Motions in arrest of judgment and for a new trial were duly filed. The court ordered that these be overruled unless plaintiff would remit $1,600 of the verdict. The *remittitur* was entered, and the motions were overruled. The court then ordered that the words "& Co." after the name of Rubelman, in the caption of the verdict, be expunged from the verdict and the record, and ordered that G. A. Rubelman pay to the sheriff within four days, for the use of plaintiff, $1,083.65, being the amount of the judgment in the original case. No such payment being made, there was final judgment.

1. The grounds of the motion in arrest were that the petition stated no cause of action against defendant; that the verdict is not responsive; that notice of attachment was not served on both defendants.

The testimony in this case as presented at length in the record, is very long, and to this is added the depositions of several persons, which were read in evidence, and which

are made part of the transcript by stipulation. One of these depositions is that of George Fleischer, from which it appears that he was a partner of Rubelman, and a member of the firm of Rubelman & Co. Precisely who composed that firm does not, so far as I have observed, appear in evidence; though it seems to be taken for granted by counsel on both sides that the firm was composed of Rubelman and Fleischer. Fleischer does not answer; he is not summoned as garnishee; no effects are attached in his hands; there seems to have been no verdict as to him. The court, in striking out the words ": & Co.," was not striking out the name of a party. Nothing was gained, and nothing was lost, by striking out the remaining appendage to the name of George A. Rubelman. We think the verdict was good and responsive to the pleadings, as a verdict against George A. Rubelman, and that the court committed no error in striking out the words "& Co." and entering judgment upon the verdict against George A. Rubelman alone.

2. The denial of the answer of the garnishee stands for the petition in issues made between the attaching or execution creditor and the garnishee, and it is to be judged by the rules of pleading applicable to a petition under the case in an ordinary action. 75 Mo. 380. It charges the garnishee with the possession of the property, and also with an indebtedness to the defendants. It alleges that the sale and delivery of the property by Richter to the garnishee was invalid, as a conveyance made to the use of Richter; but the case was put to the jury upon the assumption that a consideration passed, but that the conveyance was void as being in fraud of creditors. It is, however, too late now to make technical objections to the pleadings. There is no question of surprise, and when this is so, it becomes immaterial after verdict that the parties at the trial disregarded the issues made by the pleadings, and went to trial and in-

troduced evidence on issues made by them on the trial and indicated by the instructions.

The garnishee denied all the allegations of plaintiff, by the reply, and answered the petition that Rubelman & Co. purchased of Richter, for a fair consideration, the property in question; that they paid him a fair price for it, and owed him nothing on account of the transaction.

3. There was testimony tending to show that Richter owed Rubelman & Co. about $3,100; that when they pressed him for a settlement it was agreed between Rubelman and Richter that Richter would sell to Rubelman & Co. goods enough to satisfy this indebtedness. Richter, however, owed a debt of honor which he insisted upon paying, and Rubelman promised Richter to execute and deliver to him the note of the firm, in order that Richter might raise the money to pay this debt, which was due to one Meyer for money borrowed. On the first secular day after this conversation Fleischer, for Rubelman & Co., went to Richter's store and made out an inventory of all the goods there, with their prices, and had them billed to Rubelman & Co., together with some other personal property belonging to Richter lying elsewhere. He also received Richter's book accounts.

The books and about $1,000 of the goods were at once removed to Rubelman & Co.'s store. The other goods were sent to the auction store, except some furniture stored with one Smith. Whilst the goods were being removed, Lewis, the president of plaintiff's company, stated to Fleischer that his company was a creditor of Richter's, denounced the transaction as fraudulent, and threatened to attach. On the evening of this day, Richter saw that credit was given to him on the books of Rubelman & Co. for the goods at the value agreed upon, and received from Rubelman & Co. their note for $400 to enable him to pay Meyer as agreed, and $100 in cash to pay his hands their wages.

These transactions left Richter nothing. He then left the
city. There was testimony tending to show that the
property and accounts transferred to Rubelman & Co. were
worth twice as much as the indebtedness of Richter to
Rubelman & Co., and testimony tending to show that the
goods were taken at a fair valuation, and that they did not
at this valuation fully extinguish the indebtedness of Rich-
ter to Rubelman & Co. During the making out of the
inventory Richter pressed for a further advance of $100 to
pay his workmen. This was agreed to by Rubelman & Co.,
and was the $100 which they gave him in the evening. The
$400 note they discounted for Meyer, Richter's creditor
above mentioned, and paid the note.

All the property acquired of Richter had been either
seized by the sheriff as the property of Richter, or sold by
Rubelman & Co. before the garnishment in the present case
was served. There was testimony for the garnishee tending
to show that, of the goods of Richter in controversy, a portion
were sold by Rubelman & Co. for $1,260, being less than
the price at which they took them, and the remainder were
seized by the sheriff at the auction store, where they were
lying, and sold by him for $1,750. This, with $25 collected,
makes the proceeds of the goods $3,035. It appears that
the verdict of the jury was unwarranted by the evidence,
and that the trial court must have set it aside had not a
large *remittitur* been entered.

The facts in this case seem to be much the same as in
the case of *McNichols* v. *Richter* (13 Mo. App. 515),
recently determined by this court.

We held in that case that whilst a creditor may take the
goods of his insolvent debtor at a fair valuation in payment
of the debt; yet if one, knowing that a debtor is selling his
property to hinder or delay his creditor, buys it, and pays
full value, for the purpose of enabling his creditor to carry
out his fraudulent design, such a purchase is void; and that,

as to the advance of $500 made at the close of the transaction, according to the facts as they appeared in evidence on trial of that case, Rubelman & Co. were purchasers, and not creditors; that they could not, under the circumstances in evidence, and after warning of Richter's fraudulent intent, make further advances to him and take the remnants of his stock in payment of such advances; that the conveyance was an entirety, and if partly made to defraud creditors was altogether void; and that Rubelman & Co. would be affected with notice of the fraud, even though such notice was received after the terms of their agreement with Richter were agreed upon, if the purchase-money was paid after notice of the fraud.

It is true, that if a creditor, in addition to securing his own debt by taking an assignment of a reasonable amount of his debtor's property, purchases an additional quantity with a view to assist the debtor in putting his property beyond his creditors' reach, the whole transaction is void. But, if the vendee, with reason, believe, that the money paid by him is to be devoted to the payment of a *bona fide* indebtedness of the vendor, we do not know why the purchase must necessarily be fraudulent. Bump on Fr. Conv. 237. In the present case there was testimony tending to show that, of the $500 paid to Richter, all was demanded by him to pay specific creditors, to wit, $400 for Meyer, and $100 to pay his hands. The testimony was, that $400 was paid to Meyer, and there is no testimony that the $100 was not paid to Richter's hands. Every conveyance of all his property by way of a preference by an insolvent, must necessarily hinder and delay some one of his creditors. As it must have this effect, it must have been made with this intention. But this intention is not necessarily fraudulent, because the law allows a preference. The jury were told in the present case amongst other instructions, that : —

" If the jurors believe from the evidence that the sale

of goods and effects made by Fritz Richter to George A. Rubelman & Co. on or about July 5, 1881, was made and contrived by and between the said Fritz Ritcher and said Rubelman & Co. with intent, either to hinder, delay, or defraud the creditors or any creditor of said Richter then the sale was a nullity, and you should so find."

We think that this instruction was erroneous, for the reason set forth as to a similar instruction in *The State to use* v. *Laurie* (1 Mo. App. 371).

Under this instruction, nothing was left to the jury. The undisputed facts were, that Richter was insolvent; that he had other creditors than Rubelman & Co., and that he sold them all his property, except a few fixtures, in discharge of his debts to them. He did this, of course, with intent to delay his other creditors, or some of them; and it is undisputed that Rubelman & Co. had a general knowledge of his condition, and knew that he had other creditors, and must have participated in such design. But a design to pay one creditor, and thereby delay another creditor is not necessarily fraudulent; nor is a combination to effect such a design necessarily a fraud. I think this instruction must have mislead the jury, and is ground for reversing the case.

It is evident that the trial was not a fair one. Had the jury understood the evidence, they would not have found that the garnishee had $3,000 of this property in his possession when the garnishment was served; and so the learned judge, who presided at the trial, intimated, when he required a *remittitur* of one-half as a condition for refusing to grant a new trial.

The judgment is reversed, and the cause remanded. All the judges concur.