State to Use of T. A. Meysenburg, Respondent, v. Excelsior Distilling Company et al., Appellants.

**St. Louis Court of Appeals, December 8, 1885.**

1. Fraudulent Conveyances—Debtor and Creditor.—A debtor who is in failing circumstances may convey to a creditor a reasonable amount of property to pay or secure an unmatured debt, although the effect thereof is to hinder and delay other creditors.

2. ———— Contemporaneous Conveyances.—Two contemporaneous conveyances by a debtor to the same person, ostensibly in payment of two debts due by him to such person, will be considered together in a proceeding to set one of them aside, and if one of them is fraudulent both will be void as to creditors.

8. ———— Practice—Instructions.—After an instruction that a debtor may transfer property in payment of his debt, although the effect thereof is to hinder and delay other creditors; it is not error to refuse an instruction that if the transfer was designed to hinder and delay creditors they should find for the defendants.

Appeal from the St. Louis Circuit Court, Shepard Barclay, Judge.

*Reversed and remanded.*

Davis & Davis, for the appellants: A conveyance by an insolvent debtor, whose effect is to hinder and delay creditors, is fraudulent as to such creditors. *Burgert v. Borchert*, 59 Mo. 80; *State to use v. Nauert*, 2 Mo. App. 295; *Shelley v. Boothe*, 73 Mo. 74, 76. The verdict of the jury, after a considerable portion of the assigned property had been released and replevined, was largely in excess of the debt. *McNichols v. Rubleman*, 13 Mo. App. 515; *Potter v. McDowell*, 31 Mo. 62, 74; *Kuykendall v. McDonald*, 15 Mo. 416–420.

Albert Arnstein, for the respondent: An insolvent debtor may sell all or any portion of his assets to one or more of his creditors, for the purpose of preferring such creditor, whether the debt is due or not,

notwithstanding the fact that such sale may operate to hinder or delay other creditors, and that the preferred creditor knew that his debtor owed other debts which he could not pay, and that other creditors were by such payment being hindered and delayed. *Forrester v. Moore,* 77 Mo. 651 ; *St. Louis Coffin Co. v. Rubelman,* 15 Mo. App. 980 ; *State v. Laurie,* 1 Mo. App. 371 ; *Shelley v. Boothe,* 73 Mo. 74 ; *Holmes v. Braidwood,* 19 Cent. L. J. Add. p. 12, Sup. Ct. of Mo.; *Keiler v. Tutt,* 31 Mo. 301 ; *Gaff v. Stern,* 12 Mo. App. 115 ; Wait. Fraud. Conv., sect. 390. The assignment of the accounts was a contract independent of the sale of the goods and based on a distinct consideration. *Prince v. Shepard,* 9 Pick. 176 ; Chit. Cont. 229 ; *Keen v. Preston,* 24 Ind. 395–7 ; *Brett v. Catlin,* 47 Barb. 407 ; *Stillman v. Stillman,* 21 N. J. Eq. 126–9.

Thompson, J., delivered the opinion of the court.

This was an action on an indemnifying bond given in an attachment suit under the sheriff and marshal's act. The attachment was sued out by the Excelsior Distilling Company against Charlotte Meysenburg, who traded under the name of C. Meysenburg & Company. The property was claimed in conformity with the act by Theodore A. Meysenburg. Thereupon a portion of the property levied upon was released and the indemnifying bond now sued on was given in respect of the residue. The defence set up in the answer is, that, prior to the levy, the property had been transferred by Charlotte Meysenburg to Theodore A. Meysenburg for the purpose of hindering, delaying, and defrauding the creditors of the firm, among them the Excelsior Distilling Company. The plaintiff had a verdict and judgment.

It appeared that Charlotte Meysenburg did business under the name of C. Meysenburg & Company, as a wholesale liquor dealer in the city of St. Louis, with her husband, Gustav Meysenburg, as her manager ; that on the fourth day of June, 1883, being insolvent and unable to continue business, she made, at the request of her

brother-in-law, Theodore A. Meysenburg, three separate conveyances as follows:

1.   A bill of sale of all the goods in her store except those mentioned in the next paragraph, of the invoice value of $843.45, in payment, as the instrument recited, of an indebtedness due from her to Theodore A. Meysenburg by book account in the sum of $791.85.

2.   A bill of sale to the Fifth National Bank of St. Louis, of eleven barrels of whiskey in payment of a note of C. Meysenburg & Company, for the sum of seven hundred dollars held by said bank, due on the eleventh of June, seven days thereafter, which note was indorsed by Theodore A. Meysenburg for the accommodation of Charlotte Meysenburg. The cash value of this whiskey was about seven hundred dollars, and it was subsequently sold by the Fifth National Bank to a dealer in the country for seven hundred and twenty dollars on a credit of six months.

3.   A bill of sale by Charlotte Meysenburg to Theodore A. Meysenburg, purporting to convey all her book accounts in satisfaction and discharge of her promissory note for $1,500, held by him. Of these book accounts, $1,464.40 were collectable, the remainder, just how much at their face value we do not gather from the record, were, according to evidence adduced by the plaintiff, uncollectable.

The first of the above conveyances embraced the property levied upon by the Excelsior Distilling Company, in respect of which the indemnifying bond now sued on was given. The burden was of course, upon the defendants in the first instance to show that this bill of sale, regular upon its face, was fraudulent as to creditors. To sustain this burden of proof, they produced a large mass of evidence relating to the history and condition of the so-called firm of C. Meysenburg & Company, its dealings with its creditors, its relations with this plaintiff, and the circumstances surrounding each of these three bills of sale. We think that it was entirely proper to allow the evidence to take this wide range.

We think that upon the whole evidence, the transfer of the goods conveyed in the first bill of sale, if reviewed as an isolated transaction, would not afford any question such as ought to be submitted to a jury in respect of its *bona fides*. The evidence in regard to the existence of the debt, in payment of which the transfer was made, was unquestioned. The evidence did not tend to show that the amount of goods so transferred was more than was reasonably sufficient to pay the debt for which the transfer purported to have been made, within the rule laid down in *Potter v. McDowell* (31 Mo. 62, 74). In fact, most of the goods were afterwards sold at a public sale where there were several bidders at a rate at which the whole amount would not have produced enough by considerable to pay the debt. We also think that the second of the above named transfers, the bill of sale to the Fifth National Bank, presented nothing standing by itself, for the consideration of the jury under the issue as affirmed. The *bona fides* of this debt was unquestioned. The debt due to the Fifth National Bank was evidenced by a promissory note, which the bank had discounted in the course of trade and which was about to mature. The goods transferred in satisfaction of this debt were not of greater cash value than the debt itself. The circumstance that the transfer was procured to be made by Theodore A. Meysenburg with the primary purpose of exonerating himself from his contingent liability as indorser upon the note, is merely a collateral circumstance which cuts no figure in the case, as the transfer was made to the creditor to whom the debt was owing, and was in all respects valid and such as the law permits. It was proper to admit evidence concerning this transfer, in order that the jury might have before them a connected view of the contemporaneous transactions which went to show the intent with which the transfer immediately in question was made; but as the evidence touching this transfer presented no question for the consideration of the jury, the instructions offered by the defendants which were directed to this evidence, were

properly refused. *The State v. Laurie*, 1 Mo. App. 371; *Gaff v. Stern*, 12 Mo. App. 115; *Shelley v. Boothe*, 73 Mo. 74.

We may add that it is not the law that a creditor in failing circumstances may not make a transfer to pay or secure a creditor whose debt is not yet due.

But we think the evidence cast an amount of suspicion upon the third transfer above described sufficient to make the validity of it a proper subject of inquiry by the jury. The alleged indebtedness was due to a near relative. It had never been borne on the books of the debtor. The transferee had frequent access to the books, and it was a fair question for the jury whether he did not know that the indebtedness did not there appear. It was an old indebtedness involved in a family history and the previous failure of another brother of Theodore A. Meysenburg. The note by which it had been evidenced was antedated. There are important discrepancies between two depositions of Theodore A. Meysenburg in respect of it. The alleged assignment had been made in discharge and satisfaction of it, and yet, according to an earlier deposition of his, it was intended merely to secure him in respect of it, and was still in his possession, as we infer.

This brings us to what we regard as the essential question which arises upon the record; and in discussing it we shall entirely lay out of view the Fifth National Bank transfer, because that transfer, upon all the evidence, was entirely lawful. The court, after going fully into the circumstances surrounding these transactions, instructed the jury, at the request of the plaintiff, that "the only question in issue is, whether the transfer of the merchandise in controversy in this suit to T. A. Meysenburg was valid; the validity of no other transfer is in issue in this case." The court also refused, among others, the following instruction requested by the defendant: "If the jury believe from the evidence that the transfer of the book accounts of C. Meysenburg & Company, to T. A. Meysenburg was fraudulent, or

made to hinder or delay other creditors of C. Meysen-
burg & Company, or any one of them ; and if the jury
further find that said transfer was made at or about the
same time the bill of sale in question was made, then
the jury are at liberty to find that the bill of sale is
fraudulent.''

We are of opinion that it was error for the court to
confine the attention of the jury to the isolated transfer
of the goods in respect of which the indemnifying bond
was given.    It is true that in a strict sense the *bona fides*
of this transfer was the only issue in the case, but in the
view we take, the jury in determining the *bona fides* of
this transfer should have been directed to take into con-
sideration the *bona fides* of the transfer of the book
accounts.    The two transfers were made at the same time
by the same debtor to the same person ; and we are
clearly of opinion that for the purpose of determining
the *bona fides* of either transfer, the two are to be con-
sidered as parts of a single transaction.    We regard this
question as substantially settled by what is held in
*McNichols v. Rubelman* (13 Mo. App. 515), and *St.
Louis Coffin Co. v. Rubelman* (15 Mo. App. 280).

It was there held that if a creditor whose debtor is
about to suspend payment takes enough goods of the
debtor to pay his debt, and at the same time purchases
of him an additional quantity of his goods for the pur-
pose of assisting him in hindering, delaying, or defraud-
ing his other creditors, by converting such goods into
money and keeping it out of their reach, both convey-
ances are fraudulent ; the transfer which is fraudulent
taints and avoids the transfer which would otherwise be
good.    The court proceeded upon the principle that con-
temporaneous transactions between the same parties are
in such a case to be regarded as one transaction, and that
a conveyance by a failing debtor to a creditor, which is
void for fraud in part, is void *in toto*.    A just application
of that principle to the state of facts disclosed in the
present case would have required the court to submit to
the jury the question whether the transfer of the

accounts was intended to secure a *bona fide* debt due from Charlotte Meysenburg to T. A. Meysenburg, or whether the object of the parties to the transfer was merely to place the property in the hands of T. A. Meysenburg to hold for the benefit of Charlotte Meysenburg.

As the case must go back for another trial, we think it proper to add a few observations upon the instructions which were given and refused. We think that, aside from the first instruction given for the plaintiff as above quoted, the instructions given by the court for the plaintiff were proper so far as they went; that is, they properly submitted to the jury the question in issue from the plaintiff's standpoint. We think, however, that, in order to a proper understanding by the jury of the law applicable to the case, the court should have instructed the jury upon the law of the case as applicable to the defendants' standpoint. In other words, we think that the jury were instructed on one side of the issue only. Now, the defendants asked for thirteen instructions, and, after examining them attentively, we are unable to say that the court could be put in the wrong for refusing any one of them, not even the one which we have already quoted. Some of them stated erroneous propositions of law; some of them were argumentative; some of them were merely copied from *dicta* found in the opinions of the supreme court and of this court. The giving of the whole or any considerable number of them, would have left the jury entirely at sea. The substance of the plaintiff's instructions given was, that it is lawful for a debtor to prefer a particular creditor; that for the purpose of paying or securing such creditor, the debtor may turn over to him all of his property at a fair valuation; and that this is not a fraud upon other creditors although the known effect of it may be to hinder and delay other creditors of the debtor in the collection of their just debts. This is the undoubted law in this state. But there are some antithical propositions which ought always to be stated to the jury in such a case. One of these, stating it with reference to the

defendants' hypothesis in this case, is, that if the indebtedness is in part fictitious, whereby a larger amount of property is conveyed than is reasonably necessary to pay or secure what is in fact due, the whole conveyance is void as to other creditors. *McNichols v. Rubelman,* and *St. Louis Coffin Co. v. Rubelman, supra.*

Another is, that although the amount of property conveyed may not exceed in value the debt which is owing by the failing debtor to the particular creditor, yet if it is not the intention of the parties to the conveyance to pay or secure the debt at all, if they merely intend to get his property beyond the reach of his other creditors and have it held for his use, a suspicion of which often arises where such a conveyance is made to a near relative, then the conveyance is void as to other creditors. *Kuykendall v. McDonald,* 15 Mo. 416.

These propositions direct the minds of the jury to something definite, and explain to them under what circumstances a conveyance is to be deemed fraudulent in such a case as the one under discussion. But it is manifest that, after already instructing the jury, as the court properly instructed them, in all of the plaintiff's instructions given, except the first, the giving of an instruction which should merely have the effect of telling them that if they should find from the evidence that the conveyance was made by the parties to it for the purpose of hindering, delaying, or defrauding other creditors of the failing debtor, they should have found for the defendant, would contradict the instructions already given, would tend to confuse and mislead them, and would hence be erroneous. *Gaff v. Stern,* 12 Mo. App. 115, 119; *The State v. Laurie,* 1 Mo. App. 371.

It would be, of course, contradictory to tell the jury that they might find a conveyance good, the known and only fact of which is to hinder and delay other creditors, and yet they might find it bad because it was intended to hinder and delay other creditors. This vice runs through several of the instructions tendered by the defendants and refused by the court. Even if the ele-

ment of hindering and delaying had been omitted from them, they would still be open to the objection of leaving the jury wholly uninformed as to what the law deems a fraud upon creditors under the state of fact, such as that shown in the present case.

We wish carefully to exclude the idea that we reverse the judgment for the failure to give appropriate instructions upon the defendants' theory of the case. Mere non-direction or partial direction is not error in a civil case unless appropriate instructions are requested. We place our decision upon what we regard as a fundamental error in confining the attention of the jury to the transfer of the particular goods in question; and we merely wish to suggest what instruction the court might have given, in the exercise of an appropriate discretion, in order to place before the minds of the jury a sufficient view of the law applicable to the facts.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.