Fielden Estes, Appellant, v. Jacob Fry, Respondent.

St. Louis Court of Appeals, May 4, 1886.

1. Evidence—Abatement—Attachment.—In the trial of an issue raised by a plea in abatement, in attachment, it is error to admit evidence by the defendant that about the time of the levy of the attachment his farm was about to be sold by the plaintiff under a deed of trust.

2. ——— Compromise.—Under such an issue it is improper to permit evidence of an interview at which a compromise between the parties was attempted.

3. Attachment—Confessions of Judgment.—Confessions of judgment in favor of *bona fide* creditors for the purpose of preferring them, and not for the purpose of hindering, delaying, or defrauding other creditors, will not sustain an attachment.

4. ——— That a debtor sells property for the purpose of obtaining money with which to purchase necessaries for his family is not ground for attachment.

5. Instructions which state legal propositions in general terms are not improper unless more specific instructions are asked and refused.

6. ——— It is error to leave the jury to determine, under the evidence and instructions, whether a sale was made "for a legitimate purpose."

7. ——— Attachment.—Instructions, in attachment cases, where the grounds of attachment are alleged fraudulent sales, should specifically direct the jury as to what purposes are honest in a legal sense.

Appeal from the St. Charles County Circuit Court, W. W. Edwards, Judge.

*Reversed and remanded.*

W. H. Morrow, for the appellant: Evidence of an attempted compromise is improper. *Smith v. Shell*, 82 Mo. 215. Instructions containing abstract principles mislead rather than enlighten the jury. *Chouteau v.*

*Iron Works*, 83 Mo. 73. An instruction which declares unconditionally the right of the defendant to sell or dispose of any of his property, thus completely ignoring evidence introduced as to the fact of the mortgaged condition of much of his property to the plaintiff, and thereby assuming the truth of a controverted fact, is erroneous. *Farrar v. David*, 33 Mo. 482; *Wilkerson v. Thompson*, 82 Mo. 317; *Comer v. Taylor*, 82 Mo. 341. The phrase "legitimate purpose" means lawful, accordant with law, and, therefore, submits a question of law to the jury for their determination. *Hudson v. Railroad*, 53 Mo. 525; *Morgan v. Durfee*, 69 Mo. 469.

D. A. BALL, M. G. REYNOLDS, and W. H. BIGGS, for the respondent: A debtor may prefer one of his creditors. *Longermore v. Bushy*, 56 Mo. 540; *Dougherty v. Cooper*, 77 Mo. 528.

THOMPSON, J., delivered the opinion of the court.

This appeal is prosecuted by the plaintiff from a judgment in favor of the defendant upon a trial by a jury of the issues made by a plea in abatement to an attachment. The grounds of attachment, which the plea in abatement put in issue, were as follows:

"1. That defendant is about fraudulently to convey or assign his property or effects so as to hinder or delay his creditors.

"2. That defendant has fraudulently conveyed or assigned his property or effects so as to hinder or delay his creditors.

"3. That defendant has fraudulently concealed, removed, or disposed of his property or effects so as to hinder or delay his creditors.

"4. That defendant is about fraudulently to conceal, remove, or dispose of his property or effects so as to hinder or delay his creditors."

VOL. XXII—6

The evidence at the trial showed that the defendant was a farmer in Pike county, and was heavily indebted, not only to the plaintiff, but to others, and had been so indebted for twelve years or more, and that there were various judgments standing against him; that in May, 1881, he had a few cattle, a few hogs, two mules and a wagon, one reaper, one drill, several plows and harness; also, one horse, which a short time before he had sold to his son. It also appeared that a married son of the defendant, W. H. Fry, lived at home with him and assisted him in carrying on his farm; that the plaintiff held a deed of trust upon the defendant's farm and also a chattel mortgage, the latter, given in 1876, conveying the entire crop to be grown upon the farm, together with the future crops to be thereon grown, except what should be necessary each and every year for the support and maintenance of the defendant and his family, and the keeping up of the farm, the crops to be grown, cultivated and sold by the defendant and the proceeds thereof, including all surplus stock of every description, to be faithfully applied to the payment of the indebtedness thereby secured.

We may here dispose of a point made in connection with this remarkable mortgage, a counterpart of which had been given by the defendant's son, W. H. Fry, by which the two seemed to have virtually surrendered themselves and the gains of their future industry for an indefinite period of time in a sort of serfdom to the plaintiff. It is claimed that, whereas portions of the property which the defendant is charged, in the affidavit for the attachment, with having fraudulently disposed of or with being about fraudulently to dispose of, was at the time covered by this mortgage, it was incompetent for the defendant to vary its terms by oral testimony, showing a pre-existing agreement of a different character, relative to the same subject, between the plaintiff and himself; and that it was erroneous, in view of the existence of this mortgage, for the court to instruct the

jury that the defendant had a right to sell and dispose of any property belonging to him. We think it sufficient answer to these objections to say that we do not see in the record any evidence that the four hogs, and the mules and wagon, the selling of which constitutes the fraudulent disposition of property by the defendant, of which the plaintiff complains, were "surplus stock" grown upon the farm. On the contrary, it appears from the testimony of the defendant, when called as a witness for the plaintiff, that he had bought the mules of the plaintiff, and we do not see that they were covered by the mortgage, though that was probable. But if it was a fact and material it was susceptible of proof. Besides, we do not see that any evidence given by the defendant, which may be supposed to vary the terms of the chattel mortgage, was objected to on that ground.

It, also, appeared that the day after the levy of the attachment the defendant had confessed judgments in favor of certain other creditors; that a few days prior to the levy of the attachment, the defendant, through his son, W. H. Fry, sold the two mules and wagon to one Frier for two hundred and fifty dollars, which was a fair price, the defendant receiving the money; that a short time before the levy of the attachment, the defendant also sold, through his son, W. H. Fry, four small hogs to one Boyd, for fifteen dollars, which was also a fair price; that the son, W. H. Fry, also sold a mare belonging to him, W. H. Fry, which had been mortgaged by him to the plaintiff; that the plaintiff had W. H. Fry arrested for selling this mortgaged mare, and that, in order to procure his release from the arrest, the defendant paid to the plaintiff the two hundred and fifty dollars which he had received from Mr. Frier for the sale of the mules and wagon. Mr. Boyd testified for the plaintiff to the effect that at the trial of *Estes v. Wiginston*—when that was, does not appear, but it seems to have been understood as nearly contemporaneous with the transactions in controversy—W. H. Fry had said that the notes had

been calculated in court—meaning, we suppose, the notes of his father—and that the amount appeared to be nearly $10,000, which was more than the land and everything was worth. He wanted to sell the witness a wagon, and said that he was going to sell out what little things he had and skip out. Mr. Frier also testified that when he bought the mules and wagon of W. H. Fry, the latter either said that the mules were his, and that he wanted to sell them and go to Colorado, or that they belonged to his father and that his father wanted to sell them and go away. As W. H. Fry appears to have always lived with his father, and appears to have acted for his father in selling the mules and wagon and the hogs, these declarations of his seem to have been material, and the court seems to have correctly instructed the jury to take them into consideration. This was the substantial evidence adduced by the plaintiff to sustain the issue on his part.

On the other hand, the evidence of the defendant tended to show that he owed other creditors whom he desired to pay, and that he had made the sales of the property which he made, in good faith, for the purpose of paying other creditors, and also for the purpose of getting money to buy necessaries which his family were compelled to have to live on.

The court permitted the plaintiff to put in evidence depositions as to his general character. As the defendant does not complain of this, of course it is not a subject for revision here. But in connection with what we shall say hereafter, it indicates that the case was tried as much on the issue of the plaintiff's character as on the issue of the defendant's conduct. Such evidence was totally irrelevant.

Of the same character was evidence given by the defendant, against the objection of the plaintiff, to the effect that the plaintiff, at the time the attachment was levied, had the defendant's farm advertised for sale under the deed of trust, and that it was a short time afterwards

sold by him. This evidence had no pertinency whatever to the issues on trial, and seems to have been put in for the purpose of exciting prejudice in the minds of the jury against the plaintiff, and it no doubt had this effect. As we have said in a case of this character (*The State to use v. Excelsior Distilling Company*, 20 Mo. App. 21), the evidence on such an issue as this must necessarily take a wide range. If the plaintiff had seen fit to introduce this evidence, as tending to show a motive on the part of the defendant to sell and dispose of his personal property, with a view of keeping it from the plaintiff, or of carrying the proceeds of it out of the country, we should not be prepared to say that he would not have a right to do so. But he had the right to have it kept out, if of opinion that it would prejudice his case before the jury, and, as it had no tendency to disprove any fact of which the plaintiff had given evidence in support of the attachment, the defendant had no right to have it put in.

The same observations may be made concerning a narrative, which was given in evidence by the defendant, of a long interview which took place at the time when the plaintiff, and a friend of the plaintiff, and the deputy sheriff, came to the house of the defendant, to levy the attachment. This narrative was to the effect that the plaintiff offered to give to the defendant two hundred and fifty dollars, if the defendant would surrender to the plaintiff the possession of his farm, and that the plaintiff's attorney even offered to supplement this with a gift of fifty dollars out of his own pocket; that the defendant refused these offers, whereupon the plaintiff directed the deputy sheriff to proceed to make the levy. This evidence had no conceivable bearing upon the question whether the defendant had fraudulently disposed of or concealed his property for the purpose of hindering or delaying his creditors. Its only purpose could have been, and its necessary effect was, to show that the plaintiff had a malicious motive in levying the attachment, that his object in doing it was to force the de-

fendant to a compromise of another matter. The case was thus shifted around from the real issue, which was the motive of the defendant in making the sales of the personal property which he had sold, to the totally irrelevant issue of the motive of the plaintiff in levying the attchment. If the defendant in thus selling his personal property, had given the plaintiff legal grounds for the levy of the attachment, the plaintiff was proceeding upon his strictly legal rights, and any inquiry into his motive was utterly irrelevant, and the only effect would be to prejudice the jury against him.

The court submitted the case to the jury upon six instructions requested by the plaintiff, and four requested by the defendant. The only instruction requested by the plaintiff, which the court refused, was the instruction already alluded to, which told the jury that if any of the property disposed of by the defendant was mortgaged to the plaintiff, the law presumed a fraudulent purpose in so disposing of it. For the reasons already stated this instruction need not be further considered.

Strenuous objections are made to the four instructions given at the request of the defendant, which were as follows :

"1.    The court instructs the jury that a debtor has a right to prefer or pay one creditor in preference to other creditors, and, although the jury may believe, from the evidence in the case, that the defendant, Fry, attempted, by the confessions of judgments in favor of some of his creditors, to give said creditors preference, and enable them to collect their debts ; yet, if the jury further find from the testimony in the case that the debts due said parties were honest and justly due from the defendant, and that the defendant acted in said matter for the purpose of securing said creditors, and not for the purpose of hindering, delaying, or defrauding his other creditors, then the confession of said judgments by the defendant will not authorize a finding of the issues in this case for the plaintiff."

"2. The court instructs the jury that the defendant, Fry, although indebted, had a right to sell and dispose of any property belonging to him, and although the jury may believe from the testimony in this case that the defendant Fry did sell a span of mules and wagon to one James D. Frier, and three or four hogs to one Boyd, yet, if the jury further find, from the evidence, that defendant made said sales for any honest or legitimate purpose, and not for the purpose of hindering, delaying, or defrauding his creditors, then the verdict of the jury as to the issues submitted must be for the defendant, as far as the sale of said property is concerned."

"3. The jury are instructed that the defendant's right to dispose of his property for an honest purpose is not terminated by his indebtedness or insolvency, although the jury may believe from the evidence that the effect of such a disposition may or does have the effect of hindering and delaying his creditors."

"4. Although the jury may believe from the evidence in this cause that defendant Fry was indebted to plaintiff Estes, yet the fact is no ground for an attachment, and although the jury may believe that the defendant did sell some of his property, yet if they find that he sold the same to pay a debt, or for the *necessaries of life*, and not for the purpose of cheating and defrauding his creditors, they will find for defendant, Jacob Fry."

We see no tenable objection to the first of these instructions. It is not open to the objection that it singles out a portion of the evidence and makes the case turn upon that. It merely advises the jury as to the legal effect of certain facts shown in evidence, namely, of certain confessions of judgments, and the court correctly advised the jury in this instruction that confessions of judgment in favor of certain creditors, to whom the defendant was honestly indebted, for the mere purpose of preferring them, not for the purpose of hindering, delay-

ing, or defrauding other creditors, would not authorize the jury to find for the plaintiff.

The fourth of the above instructions, also, seems to us to have been entirely proper. It is certainly true that the mere fact that a man is in debt does not authorize an attachment, or restrain the debtor from selling the property to pay a debt or to procure the necessaries of life. It is not worth while to dwell upon such a proposition. If this was the only object of the sales of chattels made by the defendant, and if there was no purpose of cheating or defrauding creditors, such sales certainly afforded no grounds for the attachment.

We also think that the third of the above instructions contains nothing about which substantial complaint can be made. It is true that it states to the jury a proposition in the most general terms, but the proposition is undoubtedly law. If the court had submitted the case to the jury upon broad and general statements of legal doctrine, without more, we should say that the case would be merely a case of non-direction—that the only fault committed by the court would have been the failure to give sufficiently specific instructions. But it is well settled that in civil cases mere non-direction is no ground for reversing the judgment, except where more specific and proper instructions are requested and refused. *Drury v. White*, 10 Mo. 354; *Clark v. Hammerle*, 27 Mo. 55, 70.

But the second of the above instructions goes beyond this and tells the jury that if the defendant made the sales of the chattels in question "for any honest or *legitimate* purpose, and not for the purpose of hindering, delaying, or defrauding his creditors, then the verdict of the jury, as to the issues submitted, must be for the defendant, so far as the sale of said property is concerned." As a general rule, it is error to submit a question of law to the jury. *Fugate v. Carter*, 6 Mo. 267, 273; *Hickey v. Ryan*, 15 Mo. 63, 67; *Speak v. Ely & Walker Dry Goods Company, post*, p. 122. "Legiti-

mate" means lawful. A legitimate purpose is a lawful purpose. A jury ought not to be permitted to say in a case of this kind, what is, or what is not, a lawful purpose. On the contrary, the court ought to draw the minds of the jury specifically to the kind of a purpose which the law upholds in respect of such transactions as those in controversy, and the kind of a purpose which the law condemns. In the case of *The State to use v. Excelsior Distilling Co.* (20 Mo. App. 21), we had occasion to consider this question in a somewhat analogous case, where there had been an attachment of goods, a claim by a third person under the sheriff and marshal's act, an indemnifying bond given in pursuance of the act, and a subsequent action brought upon the bond. We there took occasion to advert to the necessity, in instructing juries in such cases, of directing their minds to something definite, and of explaining to them under what circumstances a conveyance is to be deemed fraudulent; of telling them under what circumstances a debtor is at liberty to dispose of his property, although the incidental effect may be to hinder and delay certain creditors in procuring satisfaction of their debts.

We take occasion again to say that in our judgment an instruction which merely tells the jury, on the one hand, that a debtor may dispose of his property for an honest purpose, and, on the other hand, that he may not dispose of it for the purpose of hindering, delaying, or defrauding his creditors, does not direct their minds to anything definite upon which to base a just or fair verdict. The jury ought to be specifically directed as to what purposes are honest in a legal sense. This the court did in other instructions, and, so far as this instruction tells them in general terms that a debtor may dispose of his property for any honest purpose, we see no objection to it for which the judgment could be reversed. But where the court goes further and throws the question of the lawfulness of the defendant's purpose into the scale, and submits that question to the loose

discretion of the jury, without qualifying the same instruction by telling them what purposes the law deems to be lawful, and what unlawful, we think the court commits error. Manifestly, what was needed in instructing the jury, under the state of facts made by the evidence in this case, was to explain to them, as the court did, that an insolvent debtor has in this state the right to prefer particular creditors to whom he is honestly indebted, and that he may for this purpose confess judgment in their favor. The jury should, also, be told that an insolvent debtor may sell his property at a fair price for the purpose of obtaining money with which to pay certain creditors, to the exclusion of others, and that this is not, in a legal sense, an injury to the creditor whose debt it postponed. The court should, also, as was done in this case, inform the jury that it is not unlawful, or a fraud upon creditors, in a legal sense, for an insolvent debtor to convert property into money in order to buy the necessaries of life. The whole policy of our exemption laws shows this. But, on the other hand, the court should carefully point out to the jury that, if the object of the debtor is to convert tangible and visible property, which is subject to execution, into money, in order to get it into his pocket where it can not be reached by execution, and thereby keep it from his creditors, this object is unlawful; and that if his object in selling such visible and tangible property is to convert it into money, with the view of carrying it out of the state, and thereby removing it beyond the reach of his creditors, this purpose is also unlawful. If, in this case, the debtor had either of these two last named purposes in view, there was ground for the attachment, and the issues on the plea in abatement ought to have been found in favor of the plaintiff.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.